Present: Carrico, C.J., Lacy, Hassell, Koontz, Kinser, and
Lemons, JJ., and Compton, S.J.

COMMONWEALTH OF VIRGINIA

v.  Record No. 012447 OPINION BY JUSTICE LEROY R. HASSELL, SR.
                                    September 13, 2002

TORIE DEVON REDMOND

                FROM THE COURT OF APPEALS OF VIRGINIA

                                I.

    In this appeal, we consider whether the Court of Appeals
of Virginia erred in holding that a criminal defendant clearly
and unambiguously invoked his right to counsel during a
custodial interrogation.

                                II.

    A grand jury in the City of Virginia Beach indicted Torie
Devon Redmond for first-degree murder as defined in Code
§ 18.2-32.  In a pretrial motion to suppress, the defendant
alleged that a confession he had made during a custodial
interrogation was inadmissible because he claimed that he had
invoked his right to counsel.  The circuit court denied the
defendant's motion and at a trial the jury convicted him of
first-degree murder and fixed his punishment at 60 years
imprisonment.  The circuit court entered a judgment confirming
the verdict, and the defendant appealed to the Court of
Appeals.

A panel of the Court of Appeals, in an unpublished opinion, held that the defendant made a clear and unambiguous request for counsel during the custodial interrogation and, therefore, the circuit court erred in denying his motion to suppress the confession. Redmond v. Commonwealth, Record No. 0762-00-1 (May 2001). Upon a rehearing, the Court of Appeals, en banc, in an unpublished opinion reversed the judgment of the circuit court and remanded the case for a new trial. Redmond v. Commonwealth, Record No. 0762-00-1 (October 2001). The Commonwealth appeals.

### III.

In May 1999, Virginia Beach City police officers arrested the defendant for the murder of Gattis Bowling, Jr. Detective Christopher C. Molleen interrogated the defendant, who was in custody, in an interview room at the police station. After Molleen made some prefatory remarks to the defendant, Molleen advised the defendant of his Miranda rights, and the defendant stated that he understood those rights.

During the interrogation, which was recorded on a videotape that was made a part of the record, the following exchange occurred:

> "DETECTIVE MOLLEEN: I'm telling you. I could not slap these cuffs on you if I didn't have enough evidence to prove this crime. The big thing is, you're the one that's in trouble. Okay? I ain't going to take no notes because we're sitting talking

2

about it.  I don't want you to put your foot in your mouth and mess the rest of your life up.  But you're the only one here that can do something good for yourself.  If you can't admit that you made a mistake, if you can't admit that things went awry, there ain't nobody going to look out for you. . . . This ain't the first time this has ever happened. Something innocent started off like that and then it just turned bad.  Maybe not exactly your fault. Maybe not exactly his fault.  Things just go bad sometimes.  The point is if you can't admit that something bad happened, then nobody should help you. Maybe, you know, maybe you are a monster.  I don't know.  Okay.  But you have to tell the truth and if you don't try to hide something, I'm going to prove you're hiding it.  And, ultimately, you know, you're the one that's going to suffer the consequences, not me.

"REDMOND:  I don't want to seem arrogant or nothing like that.

"DETECTIVE MOLLEEN:  I don't want, Torie.

"REDMOND:  These are some pretty deep charges.

"DETECTIVE MOLLEEN:  Listen to what I got to say.  I don't think.  I don't want you to seem arrogant.  Okay.  I don't want you to seem arrogant. I want you to do the best thing for yourself.  And the best thing for yourself is you need to take some of the heat off your back.  Yeah, they are very serious charges.  This is the only opportunity you're ever going to talk and give your side. Period.  This is  . . .

"REDMOND:  Can I speak to my lawyer?  I can't even talk to lawyer before I make any kinds of comments or anything?

"DETECTIVE MOLLEEN:  You can do anything you like, but I'm telling, I'm telling you like this. You have the freedom to do anything you want.  You have the freedom to go to sleep right now if you want to do that. Okay?  You have the freedom to sit here and talk to me.  Okay?  The point is and what I'm trying to tell you is, this is your opportunity;

3

this is your time.  There ain't tomorrow, there ain't later.  Okay?  There's not later.  There is no later.  And I'm trying, I'm trying to give you because you are a 24 year old man the opportunity to help yourself out a little bit.  You got a lot of years to live.  Okay.  You got a lot of people probably around you who really care for you.  A lot of people over in the area talked highly of you.  A couple of detectives talked highly of you last night.  Okay.  And I don't think in my mind, and I can't really prove that you went over there with intentions of doing anything wrong.  But sometimes bad things can happen."

Approximately two hours after Detective Molleen had initiated his interview of the defendant, another police officer, Detective Gallagher, entered the interrogation room and began to question the defendant about an unrelated robbery investigation. When Detective Gallagher began to question the defendant about this robbery, the defendant stated:  "I would like to speak to a lawyer on this one."  Detective Gallagher terminated his interrogation of the defendant.

IV.

The Commonwealth contends that the Court of Appeals erred by failing to approve the circuit court's "factual determination that the defendant did not unequivocally invoke his right to counsel."  The Commonwealth argues that the circuit court made a factual determination that Redmond's statements did not reflect an unambiguous, unequivocal invocation of his right to counsel and that the Court of Appeals should have applied a clearly erroneous standard when

4

reviewing the circuit court's ruling.  Responding, the defendant asserts that his statements were sufficient to invoke his right to counsel.

A.

Initially, we observe that we disagree with the Commonwealth's contention that this Court must apply the clearly erroneous standard of review to determine whether the circuit court properly concluded that the defendant's assertion of his right to counsel was ambiguous.  We are of opinion that the issue whether a defendant clearly requested an attorney during a custodial interrogation is a mixed question of law and fact and, as the Supreme Court has explained in a different context, this issue ultimately "calls for the application of a constitutional standard to the facts of a particular case, and in this context de novo review of that question is appropriate."  United States v. Bajakajian, 524 U.S. 321, 336-37 n.10 (1998).  This standard of review, which also has been described by the Supreme Court as independent appellate review, "tends to unify precedent and will come closer to providing law enforcement officers with a defined 'set of rules' " that will, in most instances, enable these officers to honor an accused's constitutional rights. Ornelas v. United States, 517 U.S. 690, 697 (1996) (quoting New York v. Belton, 453 U.S. 454, 458 (1981)); accord United

5

States v. Arvizu, 534 U.S. 266, ___, 122 S.Ct. 744, 751 (2002); Cooper Industries Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 436 (2001).

However, in conducting its independent review, an appellate court must review the circuit court's findings of historical fact only for clear error, and the appellate court must give due weight to inferences drawn from those factual findings. See Ornelas, 517 U.S. at 699; accord Arvizu, 534 U.S. at ___, 122 S.Ct. at 751; Cooper Industries, 532 U.S. at 435; Bajakajian, 524 U.S. at 336-37 n.10.

Thus, in applying independent appellate review of the mixed question of law and fact whether a defendant clearly requested an attorney during a custodial interrogation, "the determination of what [the defendant] actually said is a question of fact that we review only for clear error. . . . Whether those words are sufficient to invoke the right to counsel is a legal determination that we review de novo." United States v. Uribe-Galindo, 990 F.2d 522, 523 (10th Cir. 1993).

B.

The Commonwealth argues that in making a determination whether the defendant made a clear assertion of his right to counsel, we must consider the police interrogation of the defendant in its entirety, including statements in the

6

interrogation that the defendant made after his purported request for counsel. The Commonwealth contends that these subsequent statements indicate that the defendant knew how to clearly assert his right to counsel when he desired to do so.

We decline the Commonwealth's request to consider whether the defendant invoked his right to counsel by relying upon subsequent responses that he made to questions asked by police officers. As the Supreme Court has held, an accused's subsequent statements are not relevant to the question whether he invoked his right to counsel. A statement either asserts or fails to assert an accused's right to counsel. Smith v. Illinois, 469 U.S. 91, 97-98 (1984) (per curiam).

C.

The Supreme Court held in Miranda v. Arizona, 384 U.S. 436, 469-73 (1966), that the police must inform a suspect, who is subject to a custodial interrogation, of his right to an attorney and his right to have that attorney present during the interrogation. The police must explain these rights to the suspect before the interrogation begins. If a suspect waives his right to counsel after he has received Miranda warnings, the police officers are free to interrogate him, but if the suspect requests counsel at any time during the interrogation, the interrogation must cease until an attorney has been made available to the suspect or the suspect

7

reinitiates the interrogation.  Edwards v. Arizona, 451 U.S. 477, 484-85 (1981); accord Davis v. United States, 512 U.S. 452, 458 (1994); McNeil v. Wisconsin, 501 U.S. 171, 176-77 (1991); Minnick v. Mississippi, 498 U.S. 146, 150 (1990); Patterson v. Illinois, 487 U.S. 285, 291 (1988); Arizona v. Roberson, 486 U.S. 675, 680-81 (1988).

In Davis, 512 U.S. at 458-59, the Supreme Court stated the following principles which we must apply in this appeal:

> "The applicability of the '"rigid" prophylactic rule' of Edwards requires courts to 'determine whether the accused actually invoked his right to counsel.'  Smith v. Illinois, [469 U.S. at 95] (emphasis added), quoting Fare v. Michael C., 442 U.S. 707, 719 (1979).  To avoid difficulties of proof and to provide guidance to officers conducting interrogations, this is an objective inquiry.  See Connecticut v. Barrett, [479 U.S. 523, 529 (1987)].  Invocation of the Miranda right to counsel 'requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.'  McNeil v. Wisconsin, 501 U.S. at 178.  But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning. . . .
> "Rather, the suspect must unambiguously request counsel.  As we have observed, 'a statement either is such an assertion of the right to counsel or it is not.'  Smith v. Illinois, 469 U.S. at 97-98 . . . .  Although a suspect need not 'speak with the discrimination of an Oxford don,' . . . he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.  If the statement fails to meet the requisite level of

8

clarity, _Edwards_ does not require that the officers stop questioning the suspect."

Explaining the rationale underlying these principles, the Supreme Court stated:

> "In considering how a suspect must invoke the right to counsel, we must consider the other side of the _Miranda_ equation: the need for effective law enforcement. Although the courts ensure compliance with the _Miranda_ requirements through the exclusionary rule, it is police officers who must actually decide whether . . . they can question a suspect. The _Edwards_ rule – questioning must cease if the suspect asks for a lawyer – provides a bright line that can be applied by officers in the real world of investigation and interrogation without unduly hampering the gathering of information. But if we were to require questioning to cease if a suspect makes a statement that _might_ be a request for an attorney, this clarity and ease of application would be lost. Police officers would be forced to make difficult judgment calls about whether the suspect in fact wants a lawyer even though he has not said so, with the threat of suppression if they guess wrong. We therefore hold that, after a knowing and voluntary waiver of the _Miranda_ rights, law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney."

_Davis_, 512 U.S. at 461.

Prior to the Supreme Court's decision in _Davis_, this Court consistently held that a clear and unambiguous assertion of the right to counsel is necessary to invoke the rule established in _Edwards_. See _Mueller v. Commonwealth_, 244 Va. 386, 396, 422 S.E.2d 380, 387 (1992) (defendant's question "Do you think I need an attorney here?" not a clear assertion of right to counsel), _cert._ _denied_, 507 U.S. 1043 (1993);

9

*Eaton v. Commonwealth*, 240 Va. 236, 250, 252-54, 397 S.E.2d 385, 393, 395-96 (1990) (defendant's question "You did say I could have an attorney if I wanted one?" not a clear assertion of right to an attorney), *cert. denied*, 502 U.S. 824 (1991); *Poyner v. Commonwealth*, 229 Va. 401, 410, 329 S.E.2d 815, 823 (defendant's question "Didn't you say I have the right to an attorney?" not a clear assertion of right to counsel), *cert. denied*, 474 U.S. 865 (1985). And, this Court applied *Davis* in *Midkiff v. Commonwealth*, 250 Va. 262, 266-67, 462 S.E.2d 112, 115 (1995) (defendant's statement "I'll be honest with you, I'm scared to say anything without talking to a lawyer" not a clear assertion of right to counsel).

Applying the correct standard of review, as well as the substantive principles articulated by the Supreme Court and this Court's precedent, we hold that the defendant failed to make a clear and unambiguous assertion of his right to counsel. Upon our independent review of the record that includes a videotape of the custodial interrogation, and giving due weight to the inferences drawn from the historical facts therein, we conclude that the defendant's questions, "Can I speak to my lawyer? I can't even talk to [a] lawyer before I make any kinds of comments or anything?," were not a clear and unambiguous assertion of his right to counsel. Even though the circuit court in this instance did not make

10

specific factual findings, the historical facts such as the context of the defendant's questions, the tone of his voice, his voice inflections, and his demeanor support the conclusion that this defendant did not make a clear assertion of his right to counsel.

At best, the defendant's questions may be construed as a desire on his part to obtain more information about his Miranda rights.  However, the police officers had given the defendant his Miranda rights, and the defendant stated during the interrogation that he understood those rights. Additionally, the Supreme Court pointed out in Davis that "when a suspect makes an ambiguous or equivocal statement it will often be good police practice for the interviewing officers to clarify whether [the suspect] actually wants an attorney. . . .  But we decline to adopt a rule requiring officers to ask clarifying questions.  If the suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him."  512 U.S. at 461-62.  We hold that a reasonable police officer, in light of the circumstances surrounding the defendant's questions, would have concluded that the defendant did not invoke his right to counsel during the custodial interrogation.

V.

11

We will reverse the judgment of the Court of Appeals, and we will reinstate the judgment of the circuit court here.

<u>Reversed and final judgment</u>.

JUSTICE KINSER, with whom JUSTICE LACY and JUSTICE LEMONS join, concurring in the result.

While I agree that the judgment of the Court of Appeals should be reversed, I write separately because I conclude that it is not necessary, under the facts and circumstances of this case, to decide whether the defendant unequivocally invoked his right to counsel. Even if we assume, without deciding, that the defendant did invoke his right to counsel, and that the trial court thus erred in denying the motion to suppress the defendant's confession, the overwhelming weight of the remaining evidence renders any such error harmless beyond a reasonable doubt.

" '[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt;' otherwise the conviction under review must be set aside." <u>Lilly v. Commonwealth</u>, 258 Va. 548, 551, 523 S.E.2d 208, 209 (1999) (quoting <u>Chapman v. California</u>, 386 U.S. 18, 24 (1967)).

> In making that determination, the reviewing court is to consider a host of factors, including the importance of the tainted evidence in the prosecution's case, whether that evidence was cumulative, the presence or absence of evidence corroborating or contradicting the tainted

12

evidence on material points, and the overall strength of the prosecution's case.

Id. (citing Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986)).  See also Pitt v. Commonwealth, 260 Va. 692, 695, 539 S.E.2d 77, 78 (2000), cert. denied, 532 U.S. 978 (2001).

At the trial in this case, the Commonwealth presented substantial incriminating evidence independent of the defendant's confession.  In a separate non-custodial statement, the defendant admitted to being at the victim's apartment building on the morning of the murder but claimed that he did not go inside.  However, he stated that the victim owed him five dollars from a card game.  The serrated knife used to kill the victim was found in a wooded area between the victim's apartment and the apartment where the defendant was living with his grandmother.  A gray T-shirt stained with blood was found in a clothes hamper in the apartment where the defendant resided.[1]  Forensic testing confirmed that the DNA profile extracted from the blood swabbed from the knife blade and the blood on the gray T-shirt were both consistent with the victim's DNA profile, to a statistical probability of 1 in 160 million in the Caucasian population, 1 in 620 million in the black population, and 1 in 79 million in the Hispanic

---

[1] In his non-custodial statement to the police, the defendant admitted that he was wearing a gray sweatshirt on the morning that he was at the victim's apartment building.

13

population.[2]  Given these facts, even without consideration of the challenged confession, the jury was presented with " 'overwhelming evidence' " that the defendant is the person who committed this crime.  Jenkins v. Commonwealth, 244 Va. 445, 454, 423 S.E.2d 360, 366 (1992) (quoting Milton v. Wainwright, 407 U.S. 371, 372-73 (1972)), cert. denied, 507 U.S. 1036 (1993).

As to the question whether the confession could have been used by the jury to elevate the offense to first degree murder, I conclude that it could not have played a role in that determination.  Nothing in the defendant's confession establishes that he acted with premeditation.  Instead, his confession would have supported a theory of self-defense.

Furthermore, there is compelling evidence, independent of the defendant's confession, that he murdered the victim with premeditation.  The forensic pathologist who performed the autopsy identified multiple incised wounds on the victim's neck, upper chest, chin, and upper back, estimated to be at least 16 separate wounds.  Although the pathologist could not determine whether the neck wounds were inflicted by someone standing in front of or behind the victim, the pathologist opined that the knife had to have been held against the neck long enough and hard enough to create certain parallel

---

[2] The victim was a 57-year-old white male.

14

scratches that he found on the victim's neck.  See Remington

v. Commonwealth, 262 Va. 333, 353, 551 S.E.2d 620, 632 (2001)

(stabbing victim eight to ten times established specific

intent to kill), cert. denied, 122 S.Ct. 1928 (2002).  Also,

the victim had several underlying medical conditions.  He had

a tracheotomy tube in place (commonly referred to as a

breathing tube), suffered from emphysema of the lungs, and

usually ambulated by using a "walker."

Thus, I am convinced that, even if the admission of the

defendant's statement was error, such error in this case was

harmless beyond a reasonable doubt.  For this reason, I would

reverse the judgment of the Court of Appeals and reinstate the

defendant's conviction.

JUSTICE KOONTZ, dissenting.

I respectfully dissent.  This is not a complicated case;

the pertinent historical facts are not disputed and the legal

principles applicable to the resolution of the issue presented

are well established.  Torie Devon Redmond was arrested for

the murder of Gattis Bowling, Jr., and subsequently

interrogated regarding that crime by Detective Christopher C.

Molleen while held in custody at the City of Virginia Beach

Police Department.  Detective Molleen advised Redmond of his

Miranda rights, and several minutes later Redmond stated "Can

15

I speak to my lawyer?" However, Detective Molleen continued to interrogate Redmond in the absence of a lawyer until Redmond ultimately confessed to stabbing Bowling with a serrated butcher knife. The issue presented is simply whether a reasonable police officer in these circumstances would have understood Redmond's statement to be a request for an attorney. If so, then Detective Molleen was required to cease the interrogation until a lawyer was provided to Redmond as mandated by the Supreme Court's decisions in Miranda v. Arizona, 384 U.S. 436, 469-73 (1966), Edwards v. Arizona, 451 U.S. 477, 484-85 (1981), and Davis v. United States, 512 U.S. 452, 458 (1994).

It is difficult to find ambiguity in the statement "Can I speak to my lawyer?" Objectively, such a statement would be readily understood and commonly accepted as a request for counsel. However, a plurality of the Court, in an opinion authored by JUSTICE HASSELL, rejects this clear and unambiguous assertion of the constitutional right to counsel by relying, in large part, upon its subjective interpretation of Redmond's "tone of [] voice, his voice inflections, and his demeanor" after reviewing the videotape of Redmond's confession. These unparticularized mannerisms are at best peculiar to Redmond. Moreover, they shed little light, if any, upon the objective inquiry of what a reasonable police

16

officer would have understood from what Redmond actually stated.

Finally, the plurality concludes that Redmond's statement and the additional statement "I can't even talk to [my] lawyer before I make any kinds of comments or anything?" may be construed as "a desire on his part to obtain more information about his Miranda rights."[*]  In my view, the additional statement emphasizes Redmond's desire to have the benefit of counsel before the interrogation continued.  More importantly, when considered in context there can be no doubt that a reasonable police officer would have understood that Redmond was requesting counsel rather than merely a further explanation of his Miranda rights.  Redmond had indicated that he understood his right to have a lawyer present during the interrogation and that he could exercise that right at any time and not answer any questions or make any statements. Redmond's statements were entirely consistent with Redmond's

_____

[*] The plurality's reliance on Mueller v. Commonwealth, 244 Va. 386, 422 S.E.2d 380 (1992), Eaton v. Commonwealth, 240 Va. 236, 397 S.E.2d 385 (1990), and Poyner v. Commonwealth, 229 Va. 401, 329 S.E.2d 815 (1985), to support this conclusion is, in my view, unpersuasive.  In Eaton and Poyner, the defendants' statements were objectively requests for clarification of their Miranda rights.  See Eaton, 240 Va. at 250, 397 S.E.2d at 393 ("You did say I could have an attorney if I wanted one?"); Poyner, 229 Va. at 405, 329 S.E.2d at 820 ("Didn't you tell me I had the right to an attorney?").  In Mueller, the defendant asked the detective, "Do you think I

17

understanding of his right to do so.  It requires an almost total disregard for human experience to conclude that in such circumstances a reasonable police officer would not have understood that Redmond was requesting counsel, even if Detective Molleen subjectively did not understand Redmond's statements to be such a request.

Because Redmond was denied his constitutional right to counsel, his subsequent confession was constitutionally infirm and inadmissible in evidence at his trial.  The Commonwealth contends that even if the trial court erred in admitting Redmond's confession, the error was harmless because of the "overwhelming" independent evidence of Redmond's guilt. Jenkins v. Commonwealth, 244 Va. 445, 454, 423 S.E.2d 360, 366 (1992).  A different plurality of the Court, in an opinion authored by JUSTICE KINSER, declines to address the merits of Redmond's claim that he was denied his right to counsel, and instead adopts the harmless error argument asserted by the Commonwealth.

We have applied the harmless error doctrine in a case involving a confession admitted in violation of the Fifth and Sixth Amendments in Pearson v. Commonwealth, 221 Va. 936, 945, 275 S.E.2d 893, 899 (1981).  Where constitutional error

---

need an attorney here?"  Mueller, 244 Va. at 396, 422 S.E.2d at 387.

18

occurs, we are required to assess whether that error was harmless beyond a reasonable doubt. Thus, we must determine "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." Chapman v. California, 386 U.S. 18, 23 (1967). "In making that determination, the reviewing court is to consider a host of factors, including the importance of the tainted evidence in the prosecution's case, whether that evidence was cumulative, the presence or absence of evidence corroborating or contradicting the tainted evidence on material points, and the overall strength of the prosecution's case." Lilly v. Commonwealth, 258 Va. 548, 551, 523 S.E.2d 208, 209 (1999).

Applying this standard, I cannot agree with the determination that the erroneous admission of Redmond's confession was harmless. Redmond's confession included his statement that he stabbed the victim and the circumstances under which that occurred. No other independent evidence established the circumstances under which the stabbing occurred. Thus, while there is ample independent evidence incriminating Redmond, there is insufficient evidence to establish that Redmond was guilty of the first degree murder of the victim. Under such circumstances, it cannot be concluded beyond a reasonable doubt that the erroneous admission of Redmond's confession did not contribute to his

conviction of first degree murder by the jury.  Cf. id. at 552, 523 S.E.2d at 209 (holding that improperly admitted evidence corroborating defendant's role as triggerman in capital murder was not harmless error where evidence otherwise would have supported conviction for first degree murder).

For these reasons, I would affirm the judgment of the Court of Appeals of Virginia reversing the judgment of the trial court and remanding the case for a new trial.