COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Felton, Judges Humphreys and Millette
Argued at Chesapeake, Virginia


MAURICE REID CLINTON, S/K/A
   MAURICE REID CLINTON, III
                                                    MEMORANDUM OPINION* BY
v.       Record No. 0576-07-1                       JUDGE LeROY F. MILLETTE, JR.
                                                         JUNE 17, 2008
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                          Mark S. Davis, Judge

           Sonya Weaver Roots (Weaver Law Practice, on brief), for appellant.

           Karri B. Atwood, Assistant Attorney General (Robert F. McDonnell,
           Attorney General, on brief), for appellee.


       Maurice Reid Clinton (Clinton) was convicted in a jury trial of second-degree murder in

violation of Code § 18.2-32, robbery in violation Code § 18.2-58, two counts of attempted

robbery in violation of Code §§ 18.2-26 and 18.2-58, and five counts of use of a firearm in the

commission of a felony in violation of Code § 18.2-53.1. Clinton was sentenced in accordance

with the term fixed by the jury to a combined 52 years in prison. On appeal, Clinton argues the

trial court erred in denying his motion to suppress statements he made during a custodial

interrogation. We hold Clinton's statement was unclear and ambiguous and, thus, did not

constitute an invocation of the right to counsel. Therefore, we affirm. The parties being familiar

with the record below, we cite only those facts necessary to the disposition of the appeal.

       The trial court heard arguments on Clinton's pretrial motion to suppress statements he

made to Detective Rodney Perkins (Perkins) during a March 30, 2004 interview. Perkins

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

testified that prior to interviewing Clinton, he advised him of his <u>Miranda</u> rights using a pre-printed card. <u>Miranda v. Arizona</u>, 384 U.S. 436, 469-73 (1966). Clinton responded that he understood his <u>Miranda</u> rights and proceeded to engage in conversation with Perkins. The interview was video and audio recorded and generated a transcript approximately 18 pages long. Roughly 16 pages into the transcript, the following exchange occurred:

> [Perkins] But you, listen to what you're telling me, you're telling me the dude, the same dude that identified you as shooting this dude is the guy that you was making money for.
>
> [Clinton] Yeah.
>
> [Perkins] That's gone be your story?
>
> [Clinton] *I mean, know what I'm saying until know what I'm saying talk to my lawyer and see what he got to say about it.*
>
> [Perkins] He gone tell you don't take the f**king stand,
>
> [Clinton] I don't know I don't,
>
>   *  *  *  *  *  *  *
>
> [Perkins] But if it happen the way you say it happen and you know you ain't kill nobody,
>
> [Clinton] Man look,
>
> [Perkins] You ought to tell it.
>
> [Clinton] *Man I'm ready to go back to Portsmouth know what I'm saying so I can talk to a lawyer and get all this shit around the table and talk to him know what I'm saying?*
>
> [Perkins] That is not gone happen.
>
> [Clinton] Alright that's cool.
>
> [Perkins] The time is now 12:07 this concludes the interview Mr. Clinton as [sic] for his lawyer.

(Emphasis added). Perkins testified that he did not comprehend Clinton's statement, "I mean, know what I'm saying until know what I'm saying talk to my lawyer and see what he got to say

about it" to be an invocation of his right to counsel. Instead, Perkins thought that Clinton's statement indicated Clinton wanted to tell his side of the story to his lawyer. The trial court denied Clinton's motion to suppress, ruling that:

> In McDaniel versus Commonwealth, the defendant said after his Miranda rights were read to him, quote, "I think I would rather have an attorney here to speak for me." The Court of Appeals found that that was an invocation of the right to an attorney. In Edwards, in the U.S. Supreme Court case, the defendant said, "I want an attorney." Those are fairly clear statements when compared to, "I mean, know what I'm saying, until, know what I'm saying, talk to my lawyer and see what he got to say about it." I don't think that [the above-mentioned statement] is such that a reasonable person would say that he has invoked his desire to revoke the waiver, his prior waiver. I do think that the statement on Page 18, ["Man I'm ready to go back to Portsmouth know what I'm saying so I can talk to a lawyer and get all this shit around the table and talk to him know what I'm saying?"] though still not completely clear, I think it does cross the line at that point when he says, "I want, I'm ready to go back to Portsmouth know what I'm saying so I can talk to a lawyer." I think that crosses the line, and so I am going to deny the motion . . . .

This appeal followed.

Clinton argues the trial court erred in denying his motion to suppress because his statement clearly invoked his right to counsel. We disagree. A criminal suspect has the right to have a lawyer present during a custodial interrogation. Miranda, 384 U.S. at 469-70. Thus, before questioning a suspect, law enforcement officers must inform the suspect of certain rights, including the right to have counsel present. Id. at 471. The police can question the suspect if he waives his Miranda rights; however, if at any time during the custodial interrogation the suspect invokes his right to counsel, the interrogation must terminate until counsel has been made available or the suspect reinitiates contact with police. Edwards v. Arizona, 451 U.S. 477, 484 (1981).

On appeal from a trial court's denial of a motion to suppress, the appellant must show the trial court's ruling constituted reversible error. Stanley v. Commonwealth, 16 Va. App. 873,

- 3 -

874, 433 S.E.2d 512, 513 (1993).  "[W]e view the evidence in the light most favorable to the Commonwealth," granting to it all reasonable inferences fairly deducible therefrom.  Mitchell v. Commonwealth, 30 Va. App. 520, 526, 518 S.E.2d 330, 333 (1999) (citing Giles v. Commonwealth, 28 Va. App. 527, 532, 507 S.E.2d 102, 105 (1998)).

Whether a suspect invoked his right to counsel during a custodial interrogation is a mixed question of law and fact.  Medley v. Commonwealth, 44 Va. App. 19, 30, 602 S.E.2d 411, 416 (2004) (*en banc*) (citing Commonwealth v. Redmond, 264 Va. 321, 326, 568 S.E.2d 695, 697 (2002)).  "'The determination of what [the accused] actually said is a question of fact that we review only for clear error. . . .  Whether those words are sufficient to invoke the right to counsel is a legal determination that we review *de novo*.'"  Id. (quoting Redmond, 264 Va. at 327, 568 S.E.2d at 698).  Additionally, we review a suspect's statement objectively, such that "a suspect must state his desire to have counsel present with sufficient clarity that a reasonable police officer under the circumstances would understand the statement to be a request for counsel."  Commonwealth v. Hilliard, 270 Va. 42, 49, 613 S.E.2d 579, 584 (2005) (citing Davis v. United States, 512 U.S. 452, 459 (1994); Redmond, 264 Va. at 328-29, 568 S.E.2d at 699; Eaton v. Commonwealth, 240 Va. 236, 253-54, 397 S.E.2d 385, 395-96 (1990)).

In Davis, the United States Supreme Court affirmed the clear and unambiguous standard, despite the possibility that "requiring a clear assertion of the right to counsel might disadvantage some suspects who -- because of fear, intimidation, *lack of linguistic skills*, or a variety of other reasons -- will not clearly articulate their right to counsel although they actually want to have a lawyer present."  Davis, 512 U.S. at 460 (emphasis added).  If a suspect's statement is not an unambiguous or unequivocal request for counsel, a police officer has no obligation to stop questioning the suspect.  Id. at 461-62.  Whether a suspect made a clear invocation of the right to

counsel must be decided according to the totality of the circumstances.  Hilliard, 270 Va. at 52, 613 S.E.2d at 586.

The content of Clinton's statement to Perkins is not in dispute, "I mean, know what I'm saying until know what I'm saying talk to my lawyer and see what he got to say about it." Therefore, on appeal we will conduct a *de novo* review of whether Clinton's words were sufficient to invoke his right to counsel.  Id. at 50, 613 S.E.2d at 584.  We hold Clinton's statement was made in direct response to Perkins' question regarding Clinton's version of events. Clinton's statement expressed his desire to keep his story the same until he spoke with his attorney, rather than delineated his desire to terminate the interrogation until he had access to an attorney.  Perkins' contention that he did not comprehend Clinton's first statement as a clear invocation of his right to counsel is additionally supported when, only moments later, Perkins immediately terminated the interview after Clinton said he was ready to go back to Portsmouth so he could talk to a lawyer.

As the trial court noted, Clinton's first statement is, at best, unclear when compared to the unequivocal requests for counsel found in Edwards, 451 U.S. at 479-84, "I want an attorney . . ." and in McDaniel v. Commonwealth, 30 Va. App. 602, 604-07, 518 S.E.2d 851, 852-54 (1999) (*en banc*), "I think I would rather have an attorney here to speak for me."  Clinton's statement is even more confusing than statements found to be *ambiguous* assertions of the right to counsel, such as "Maybe I should talk to a lawyer," Davis, 512 U.S. at 455-62, and "I'll be honest with you, I'm scared to say anything without talking to a lawyer," Midkiff v. Commonwealth, 250 Va. 262, 265-67, 462 S.E.2d 112, 114-15 (1995).  Therefore, a reasonable police officer under the circumstances would not have understood Clinton's statement to be an invocation of his right to counsel.  Hilliard, 270 Va. at 49, 613 S.E.2d at 584.

We hold Clinton's statement, "I mean, know what I'm saying until know what I'm saying talk to my lawyer and see what he got to say about it," failed to amount to a clear and unequivocal assertion of his right to counsel.  Accordingly, we affirm the judgment of the trial court.

<u>Affirmed.</u>