*583 ELDER, J.,
with whom FELTON, C.J., FRANK and ALSTON, JJ., join, dissenting.
I agree generally with the majority’s recitation of the applicable legal principles as far as they go, but I believe the majority overlooks some of the undisputed facts in the record and also fails to apply an important legal principle to those facts. The majority concludes Investigators Chaney and Nicholson “merely clarified [appellant’s] ambiguous statement [concerning his desire for a lawyer], which was both the legally allowable and legally prudent response to that statement.” See supra at 582, 704 S.E.2d at 593 (emphases added). Although it may have been prudent for the detectives to continue questioning appellant if they hoped to elicit an incriminating confession from an unrepresented defendant, I would hold their doing so was not, in fact, legally allowable. Appellant’s statement, “That’s what I want, a lawyer, man,” was not remotely ambiguous, either in the abstract or in the context in which it was uttered in this case. To the contrary, it constituted an unequivocal invocation of appellant’s Fifth Amendment right to have counsel present during the custodial interrogation appellant was about to undergo. Accordingly, under settled principles, the investigators were required to cease their interrogation of appellant immediately, and the confession they elicited during the uncounseled interrogation that followed violated appellant’s Fifth Amendment rights.
The right under the Fifth Amendment of the United States Constitution “to have counsel present during a custodial interrogation is an axiom of American law expressed in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)[,] and its progeny.” Zektaw v. Commonwealth, 278 Va. 127, 135, 677 S.E.2d 49, 53 (2009). “[T]he United States Supreme Court [has] established that ‘[i]f the individual states ... he wants an attorney, the interrogation must cease until an attorney is present,’ ” Commonwealth v. Ferguson, 278 Va. 118, 123, 677 S.E.2d 45, 48 (2009) (quoting Miranda, 384 U.S. at 474, 86 S.Ct. at 1628), or until “the suspect reinitiates the interrogation,” Commonwealth v. Hilliard, 270 Va. 42, 49, 613 *584 S.E.2d 579, 584 (2005) (citing Davis v. United States, 512 U.S. 452, 458, 114 S.Ct. 2350, 2355, 129 L.Ed.2d 362 (1994); Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 1884, 68 L.Ed.2d 378 (1981)). See generally Michigan v. Mosley, 423 U.S. 96, 104, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975) (holding police should “scrupulously” honor a request for counsel (emphasis added)).
Determining whether a suspect actually invoked his right to counsel under the Fifth Amendment involves an objective inquiry. Davis, 512 U.S. at 458-59, 114 S.Ct. at 2355. To invoke this right, a suspect must state his desire to have counsel present with sufficient clarity that a reasonable police officer under the circumstances would understand the statement to be a request for counsel.[14] Id. If a suspect’s reference to an attorney is either ambiguous or equivocal, such that a reasonable officer under the circumstances would only have understood that the suspect might be invoking his right to counsel, the officer is not required to stop questioning the suspect. Id. at 459, 461, 114 S.Ct. at 2355, 2356. In the case of an ambiguous statement, an officer may ask questions “to clarify whether [the suspect] actually wants an attorney.” Commonwealth v. Redmond, 264 Va. 321, 330, 568 S.E.2d 695, *585 700 (2002). However, where the request is clear, subsequent dialog is inappropriate, and “an accused’s subsequent statements are not relevant to the question whether he invoked his right to counsel. A statement either asserts or fails to assert an accused’s right to counsel.” Id. at 327, 568 S.E.2d at 698 (citing Smith v. Illinois, 469 U.S. 91, 97-98, 105 S.Ct. 490, 494, 83 L.Ed.2d 488 (1984) (per curiam)). Where the parties “[do] not dispute the content of [a defendant’s] statements to the police[,] ... appellate consideration of the circuit court’s denial of [the defendant’s] motion to suppress is restricted to a de novo review of the legal issue of whether [the defendant’s] words, taken in context, were sufficient to invoke his right to counsel.” Hilliard, 270 Va. at 50, 613 S.E.2d at 584.
The majority concedes appellant’s statement itself, “That’s what I want, a lawyer, man,” was unequivocal and, thus, that it must examine the context in which appellant made that statement. In determining whether the context of the statement resulted in ambiguity, the majority opinion omits certain testimony of the investigators which is critical to determining whether the trial court erred in concluding appellant’s statement was not an invocation of his Fifth Amendment right to counsel.
As the majority opinion indicates, on the night of appellant’s arrest, the investigators advised him of his rights pursuant to Miranda, and he waived those rights, including his right to have counsel present. He then spoke with Investigators Chaney and Nicholson for two hours, during which time he said nothing incriminating. This was his first meeting with the investigators. The next morning, appellant asked to talk to Investigator Chaney again. The majority opinion accurately reflects the two men had what was their second meeting at about 10:00 a.m. that morning and that appellant “instigate[d]” this meeting. When Investigator Chaney went to see appellant in his holding cell near the district court courtroom, appellant asked “to go home,” saying “[he] want[ed] to see [his] [infant] son,” and Investigator Chaney told appellant, “[Y]ou can’t go home. You’re charged, you know, with shooting into an occupied vehicle resulting in death.” Chaney *586 testified that, after that exchange, “[they] just had ... basic conversation,” and Chaney said, “[W]ell, I’m going back downstairs ... but I’ll bring you down later to the office and talk to you again.” Chaney did not testify appellant gave any indication at that time that he wished to talk further with the investigators.
Several hours later, Investigator Chaney had appellant brought to the investigators’ office, where they conducted the videotaped interview. This was Investigator Chaney’s third meeting with appellant. Investigator Chaney testified unequivocally that he and Investigator Nicholson, not appellant, initiated this third meeting, saying we “had [appellant] brought up ... [because] we wanted to talk to him again.” At the beginning of the videotaped interview, Investigator Chaney confirmed he and Nicholson initiated this third meeting, and Chaney then expressly discussed appellant’s right to have counsel present during the impending interrogation:
Inv. Chaney: You wanna, you want to talk to us some more?

Appellant: Ya’ll want to talk to me or something?

Inv. Chaney: Yeah. You want to talk to us?

Appellant: Ya’ll want to talk to me. I ain’t doing nothing [inaudible] sitting.

Inv. Chaney: Well reason we ask is ’cause we brought you back over that, this morning you asked for me, and we brought you back over here[,] the reason I’m asking you is because your rights still apply. You still understand your rights?
Appellant: I have the right to remain silent.
Capt. Nicholson: Yeah.
Inv. Chaney: Everything that I read you last night, do you still understand your rights?
Appellant: Mmm-hmm.
Inv. Chaney: You can have a lawyer present if you want one.
*587 Appellant: I want, that’s what I need. I want to know what’s, you know what I’m saying?
Inv. Chaney: You can stop answering at any time.
Appellant: That’s what I want, a lawyer, man.
(Emphasis added).
I would hold an objective examination of appellant’s statement in the full context in which it was made compels the conclusion, as a matter of law, that appellant unequivocally invoked his right to counsel under the Fifth Amendment and that the officers violated that right by failing immediately to cease questioning him. It is true that the evidence, viewed in the light most favorable to the Commonwealth, established appellant had been brought to the courthouse for arraignment and “appoint[ment] [of]” “an attorney ... under his Sixth Amendment rights” and that these things did not actually take place as scheduled that morning. Nevertheless, the video-recorded exchange between appellant and the officers establishes that appellant asserted his right to an attorney in the context of the impending custodial interrogation, initiated by the investigators, and their review of his rights pursuant to Miranda. As quoted above, when Investigator Chaney reminded appellant of his right to “have a lawyer present [for questioning] if [he] want[ed] one,” appellant responded “[Tjhat’s what I need.” When Investigator Chaney proceeded to tell appellant that he “[could] stop answering at any time,” appellant again focused on his right to have “a lawyer present,” saying “That’s what I want, a lawyer, man.”
As set out above, the United States and Virginia Supreme Courts have recognized, and the majority opinion does not adequately acknowledge, that “[a] statement either asserts or fails to assert an accused’s right to counsel” and “an accused’s subsequent statements are not relevant to the question whether he invoked his right to counsel.” Redmond, 264 Va. at 327, 568 S.E.2d at 698 (emphasis added) (citing Smith, 469 U.S. at 97-98, 105 S.Ct. at 494). Applying these principles to the circumstances of this case, I would hold as a matter of law that appellant’s statement constituted an unequivocal invoca *588 tion of his right to have counsel present during the custodial interrogation and that the investigators violated appellant’s Fifth Amendment right to counsel by failing scrupulously to honor that request. In the face of the clear invocation of that right, the officers lacked authority to ask any clarifying questions, and the answers to those questions must be disregarded.[15] See id.
To the extent the Commonwealth argues and the majority implies Investigator Chaney may have thought it was unlikely that appellant was invoking his Fifth Amendment right to counsel because appellant initiated the meeting that was video recorded, any such inference was objectively unreasonable on the facts of this case, viewed in the light most favorable to the Commonwealth. Investigator Chaney’s testimony indicates appellant initiated only the second meeting, which took place at appellant’s district court holding cell and involved appellant’s asking to go home to see his infant son, which Chaney said would not be possible. After some additional “basic conversation,” Investigator Chaney told appellant he would bring appellant over to talk again later in the day, but Chaney gave no indication that he did so because appellant expressed *589 a desire to talk to him further or to discuss the crime for which he stood charged. In addition, appellant indicated in the dialog at the beginning of the video recording that he was in the investigators’ office because “Ya’ll want to talk to me.” When Investigator Chaney agreed they wanted to talk to appellant and inquired, “You want to talk to us?” appellant responded once again, “Ya’ll want to talk to me.”
Thus, the evidence, viewed in the light most favorable to the Commonwealth, indicates that when appellant said, “That’s what I want, a lawyer, man,” he had been brought to the investigators’ office for additional questioning at the investigators’ request rather than his own and the investigators were in the process of readvising him of his rights pursuant to Miranda. Under these circumstances, the objective evidence indicates as a matter of law that appellant unequivocally invoked his Fifth Amendment right to counsel, compelling the suppression of the statements he made when the investigators failed immediately to cease that interrogation. Accordingly, I respectfully dissent from the majority’s decision affirming the admission of appellant’s uncounseled confession.

. Quoting a concurring opinion in a United States Supreme Court case, the majority indicates suppression is appropriate " 'only if a reasonable officer should have been certain that the suspect expressed’ the unambiguous and unequivocal election of his right to counsel during custodial interrogation.” See supra at 582, 704 S.E.2d at 593 (quoting "[Texas v.] Cobb, 532 U.S. [162,] 176 [121 S.Ct. 1335, 1345, 149 L.Ed.2d 321] [(2001)] (Kennedy, J., concurring) (emphasis added) (citing Davis, 512 U.S. at 459, 114 S.Ct. at 2355)”). The case upon which the concurring opinion of Justice Kennedy relies, however, requires only that the suspect "must unambiguously request counsel” and provides that as long as he "articulate[s] his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney,” he "need not 'speak with the discrimination of an Oxford don.' ” Davis, 512 U.S. at 459, 114 S.Ct. at 2355 (quoting id. at 476, 114 S.Ct. at 2364 (Souter, J., concurring in the judgment)). To the extent the majority’s requirement of proof that a reasonable officer must be "certain” the suspect has invoked his right to counsel might be viewed as adopting a higher standard of proof than “unambiguous[ness],” I would reject its "certainfty]” language.

. The fact that appellant subsequently referenced his belief that he had been brought to court that day so that counsel could be appointed for him did not negate his prior statement that he wanted an attorney present for questioning. The fact that the clarifying questions had nothing to do with the charged crimes does not support the conclusion that no Fifth Amendment violation could have occurred. As the Supreme Court has observed, if a suspect invokes his right to have counsel present, thereby indicating his
"belie[f] that he is not capable of undergoing such questioning without advice of counsel, then it is presumed that any subsequent waiver that has come at the authorities’ behest, and not at the suspect’s own instigation, is itself the product of 'inherently compelling pressures’ and not the purely voluntary choice of the suspect."
Zektaw, 278 Va. at 136, 677 S.E.2d at 53 (quoting Arizona v. Roberson, 486 U.S. 675, 681, 108 S.Ct. 2093, 2097-98, 100 L.Ed.2d 704 (1988)); see also Michigan v. Harvey, 494 U.S. 344, 350, 110 S.Ct. 1176, 1180, 108 L.Ed.2d 293 (1990) (noting Edwards "established [a] ... prophylactic rule designed to prevent police from badgering a defendant into waiving his previously asserted Miranda rights”), quoted with approval in Montejo v. Louisiana,-U.S.-,-, 129 S.Ct. 2079, 2085, 173 L.Ed.2d 955 (2009).