COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Judges Alston, McCullough and Senior Judge Clements
Argued by teleconference


COMMONWEALTH OF VIRGINIA

                                                MEMORANDUM OPINION[*] BY
v.       Record No. 0331-13-4                   JUDGE STEPHEN R. McCULLOUGH
                                                JULY 9, 2013

CAROL LUTSKY


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Robert J. Smith, Judge

Victoria Johnson, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on briefs), for appellant.

Jeffrey G. Overand (Amanda L. Indorf; Overand, Buster & Webb,
P.C., on brief), for appellee.


        The issue presented in this appeal is whether police officers are foreclosed, under the

Fifth Amendment, from asking questions of a suspect who is not in custody when that person

previously informed the police, also in a non-custodial setting, that she was represented by

counsel.  We conclude that the Fifth Amendment does not preclude the police from questioning a

suspect in such a situation, and we reverse the judgment of the trial court.

                                          BACKGROUND

        The defendant, Carol Lutsky, began dating Janai Williams in October of 2010.  Williams

gave birth to N.W. that same month.  A year later, on October 4, 2011, after Williams had gone

to a club with another woman, Lutsky called Williams and told her that N.W. had fallen and

injured his head.  N.W. did not survive his injuries.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Police spoke with Lutsky several times after N.W.'s death. At one point she agreed to take a polygraph. The day before the polygraph was scheduled to take place, Detectives Scott Leroux and Art Sylmar stopped by Lutsky's residence. While standing on the threshold of her apartment, Lutsky informed Detectives Leroux and Sylmar that she would not take the polygraph and further told Detective Leroux to "please go through my lawyer." App. at 138. Lutsky also testified that she indicated to the detectives that she did not have any more statements for them and that she gave Detective Leroux her attorney's business card.

Police later learned that Lutsky wanted to talk to Williams. On November 4, 2011, approximately one month after Lutsky had informed the police that she had retained an attorney, Detective Leroux made arrangements for Williams to call Lutsky. Police listened to and recorded this conversation. The call was placed from an office in the police department. During the call, police suggested to Williams how she should phrase certain questions.

Approximately eight months later, Lutsky was charged with the murder of N.W. and with felony child neglect. She filed a pretrial motion to suppress, arguing that statements she made to the police during her telephone call with Williams on November 4, 2011 must be excluded from evidence at trial because they were obtained in violation of the Fifth Amendment of the United States Constitution. Lutsky made a number of arguments in her motion to suppress. She first argued that the police violated her right against self-incrimination by knowingly circumventing her assertion of that right through use of deception and an agent. Alternatively, she argued that her statements to Williams were inadmissible because she had made them involuntarily due to police coercion. The trial court granted Lutsky's motion to suppress. The Commonwealth appeals.

ANALYSIS

The Fifth Amendment of the United States Constitution provides in relevant part that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. That provision has been held enforceable against the states via the Due Process Clause of the Fourteenth Amendment. Malloy v. Hogan, 378 U.S. 1, 6 (1964).

When reviewing a trial court's ruling on a motion to suppress based on an alleged Fifth Amendment violation, this Court reviews "the trial court's findings of historical fact only for 'clear error,' but" reviews "*de novo* the trial court's application of defined legal standards to the particular facts." Watts v. Commonwealth, 38 Va. App. 206, 213, 562 S.E.2d 699, 703 (2002); see also Commonwealth v. Redmond, 264 Va. 321, 327, 568 S.E.2d 695, 698 (2002).

 Initially, we note that the defendant's *Sixth* Amendment right to counsel is not at issue. The Sixth Amendment right to counsel attaches "at or after the time that judicial proceedings have been initiated . . . 'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" Brewer v. Williams, 430 U.S. 387, 398 (1977) (quoting Kirby v. Illinois, 406 U.S. 682, 689 (1972)). See also Fellers v. United States, 540 U.S. 519, 523-24 (2004). The telephone conversation between the defendant and Williams took place on November 4, 2011. The defendant was not indicted until July 16, 2012.

Our first task is to determine the basis upon which the trial court granted Lutsky's motion to suppress. The Commonwealth argues that the trial court granted the suppression motion on the ground that Lutsky had invoked her right to counsel, that she communicated this fact to the police, and the Fifth Amendment precluded further questioning by the police. The defendant argues that the trial court's finding that Lutsky "had counsel" constitutes a finding that she made "an invocation of her right to remain silent" and, again, the Fifth Amendment foreclosed further questioning by the police. Lutsky Br. at 6. We conclude that the Commonwealth has the better

of the argument. The trial court stated that it was granting the suppression motion because Lutsky "did unambiguously inform the detective on October 12 that she had a lawyer," and in the trial court's view, this required the police to cease questioning. App. at 162. Comments made by the court prior to its decision to grant the motion to suppress support this conclusion. For example, the trial court asked the prosecutor the following hypothetical: "[S]uppose the uncontroverted facts were [that] she said, 'I have a lawyer, his name is T. Scott Brisendine, don't call me again,' would this thing have been lawful?" App. at 149-50. When the prosecutor answered that the sting telephone call would have been legal, the trial court stated, "I disagree with your answer to that question as I framed it." App. at 150. Nowhere did the trial court articulate a finding that Lutsky had invoked a right to remain silent.

Having determined the basis of the order of suppression, we further note that the parties agree that Lutsky was not in custody when she made incriminating statements to Williams. Therefore, the narrow issue before us is whether the Fifth Amendment precludes the police from using an undercover informant to obtain an incriminating statement from a defendant who previously informed the police, in a non-custodial setting, that she is represented by counsel.[1]

A number of principles guide our analysis of this issue. The Supreme Court has noted that while "[t]here have been sharply differing views within the Court as to the ultimate reach of the Fifth Amendment right against compulsory self-incrimination[,] . . . all have agreed that a necessary element of compulsory self-incrimination is some kind of compulsion." Hoffa v. United States, 385 U.S. 293, 303-04 (1966). For example, in Miranda v. Arizona, 384 U.S. 436 (1966), the Court explained that the warnings were necessary "to dispel the compulsion inherent

---

[1] There is no question that Williams was acting at the request of the police and at their direction. At trial, the prosecution expressly indicated it could not dispute that Williams was acting as an agent of the government.

in custodial surroundings." Id. at 458.[2] The Court also required that, if the defendant "indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking," id. at 444-45, "the interrogation must cease until an attorney is present," id. at 474. In Edwards v. Arizona, 451 U.S. 477, 485 (1981), the Court held that the police may not "reinterrogate an accused *in custody* if he has clearly asserted his right to counsel." (Emphasis added). "The Fifth Amendment right identified in Miranda is the right to have counsel present at any *custodial interrogation*. Absent [custodial] interrogation, there would have been no infringement of the right that [the defendant] invoked and there would be no occasion to determine whether there had been a valid waiver." Id. at 485-86 (emphasis added).

Outside of the procedural safeguards mandated in Miranda—safeguards designed to protect a defendant's Fifth Amendment rights against the coercive pressures inherent in custodial interrogation—the Fifth Amendment has not been interpreted to preclude police questioning merely because a suspect has retained counsel and informed the police of this fact. See Tipton v. Commonwealth, 18 Va. App. 832, 834, 447 S.E.2d 539, 540 (1994) ("Because Tipton was not in custody when he requested counsel during his initial interrogation, the holding in Edwards does not dictate that Tipton's subsequent confession violated his Fifth Amendment rights.").

Appellant does not point us to any authority supporting the claim that the invocation of the right to counsel outside of a Miranda context forecloses further police questioning. To the contrary, persuasive authority uniformly rejects the core proposition that prompted the trial court to grant the suppression motion, *i.e.* that an invocation of the right to counsel outside of the custodial setting categorically forecloses further questioning by the police. See United States v. Lennick, 917 F.2d 974, 978 (7th Cir. 1990) ("[Defendant] was never in custody. Therefore, his

---

[2] The parties agree that this case does not implicate an invocation of the right to counsel during a custodial interrogation and, therefore, the jurisprudence involving Miranda warnings does not apply.

statement that he 'had an attorney who wanted to be present at any questioning concerning the rifle' did not require agent Allbritten to stop his inquiry. Again, we affirm the district court's conclusion that [defendant] was not in custody, and that he therefore was not deprived of his fifth amendment right to counsel."); State v. Stanley, 809 P.2d 944, 950 (Ariz. 1991) ("We conclude (1) that [defendant] was not in custody; (2) his sixth amendment rights did not attach; (3) even though a suspect invokes his right to decline further interrogation until he has spoken to a lawyer, the police may continue to question him in a non-custodial setting; and, (4) so long as the responses are voluntary, and his will has not been overborne, the suspect's responses may be used in evidence against him."); People v. Goyer, 638 N.E.2d 390, 396 (Ill. App. Ct. 1994) ("The fifth amendment right to counsel relates only to *custodial* interrogation. Because defendant was not in custody, his statement regarding an attorney, even if considered a clear and unequivocal request, does not implicate any constitutionally protected right, and the officers were consequently not required to end the interview." (emphasis in original) (internal citations omitted)); Kelley v. State, 825 N.E.2d 420, 430 (Ind. Ct. App. 2005) ("Assuming that [defendant] made the request to speak to an attorney, his right to counsel had not accrued because he was not in custody. Thus, the interview need not have stopped when the request was made and the admission of the evidence is not precluded."); Hunt v. State, 687 So. 2d 1154, 1160 (Miss. 1996) ("[I]f [defendant's] first alleged request for an attorney took place in a non-custodial setting, her Fifth Amendment right to counsel was not implicated."); State v. Fry, 573 N.E.2d 1108, 1109-10 (Ohio Ct. App. 1988) ("[A] police officer may continue to question a suspect in a noncustodial situation, even if the suspect has made a request for counsel, as long as the officer's persistence in questioning does not render statements made by the suspect involuntary."); State v. Sadler, 735 P.2d 1267, 1270 (Or. Ct. App. 1987) ("Defendant urges us to hold, however, that, even if she was not in custody on October 24, her rights to remain silent and

to counsel, once invoked, are 'sacrosanct' and that her custodial status is irrelevant. Defendant cites no authority for that proposition and we are aware of none.").

Moreover, the United States Supreme Court has observed that a defendant who is not in custody may not prospectively invoke the right to counsel so as to require suppression of statements made later while in custody. See Bobby v. Dixon, 132 S. Ct. 26, 29 (2011). It follows all the more that a defendant may not prospectively invoke the right to counsel in a non-custodial setting so as to bar later statements that are also made in a non-custodial setting. [3]

The defendant argues that the Fifth Amendment's reach is not limited to custodial interrogations, but rather applies in all settings involving police coercion. True enough, but, as noted above, the basis for the trial court's suppression of Lutsky's statement was that Lutsky had retained a lawyer and told the police that she had done so, thereby precluding, as a matter of Fifth Amendment law, any further questioning by the police. The trial court here erroneously applied the prophylactic rules of Miranda and Edwards to a non-custodial setting.

The Fifth Amendment does not preclude the police from questioning a suspect who is not in custody just because the suspect had earlier indicated to the police, also in a non-custodial setting, that she was represented by counsel.

CONCLUSION

We reverse the judgment of the trial court and remand the case for further proceedings.

Reversed and remanded.

---

[3] We do not understand the trial court to have based its ruling on an invocation of the right to remain silent. Even if it had, however, the analysis and the outcome would be the same: Miranda and Edwards do not apply outside of the context of custodial interrogation and, therefore, a non-custodial invocation of the right to remain silent does not foreclose police from using a sting operation to later question a suspect in a non-custodial setting.