UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Chafin and Senior Judge Bumgardner
Argued by teleconference


COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE TERESA M. CHAFIN

v.      Record No. 0533-16-1

SEPTEMBER 13, 2016

STEPHEN LAMAR GARRICK


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Leslie L. Lilley, Judge

Elizabeth Kiernan Fitzgerald, Assistant Attorney General (Mark R.
Herring, Attorney General, on briefs), for appellant.

Afshin Farashahi (Afshin Farashahi, P.C., on brief), for appellee.


In this pretrial appeal filed pursuant to Code § 19.2-398, the Commonwealth challenges

the Circuit Court of the City of Virginia Beach's decision to suppress evidence obtained from a

vehicle driven by Stephen Lamar Garrick. The Commonwealth contends that the police officers

who searched the vehicle had probable cause to believe that evidence of criminal activity would

be found inside of it following Garrick's arrest.[1] Garrick assigns cross-error to the circuit court's

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The Commonwealth also argues that the circuit court erred by concluding that a
previous waiver of Garrick's Fourth Amendment rights was not in effect when the searches at
issue occurred. In accordance with a prior plea agreement between Garrick and the
Commonwealth, Garrick pled guilty to a drug offense and the circuit court placed him on first
offender status pursuant to Code § 18.2-251. As part of the plea agreement, Garrick waived his
Fourth Amendment rights "against unreasonable searches and seizures for a period of one year or
until this matter is finally disposed of by the court, whichever is later." On May 19, 2015, the
circuit court found Garrick guilty of the underlying offense, terminated his first offender status,
and continued the matter for sentencing. The search at issue in this case occurred on July 15,
2015, after Garrick's conviction and the termination of his first offender status but before his
sentencing. As we conclude that the searches at issue were lawful, we do not address the merits

refusal to suppress evidence obtained from his person. He argues that the search of his person following his arrest was unlawful because the police violated his constitutional rights when they stopped his vehicle and asked him for identification. For the reasons that follow, we reverse the circuit court's decision.

## I. BACKGROUND

On the evening of July 15, 2015, Officers Daniel R. Ertmann and Michael A. Weeks of the Virginia Beach Police Department were on patrol in a "high-crime" area near a gravel storage quarry and a salvage yard. Ertmann and Weeks testified that individuals frequently visited the gravel quarry to use narcotics and meet for "adult encounters." Ertmann and Weeks also explained that individuals routinely stole items from the salvage yard.

At around 9:30 p.m., Ertmann and Weeks saw two vehicles stopped beside each other near the gravel quarry. One of the vehicles, a sedan, was stopped in the roadway. The other vehicle, an SUV, was stopped on the side of the road. Both vehicles were running and facing in the same direction.

Ertmann and Weeks decided to stop the sedan to determine why the vehicle was stopped in the roadway. Weeks, the driver of the officers' patrol cruiser, activated the emergency lights on the car and pulled up behind the sedan. As the officers approached the vehicles on foot, the driver of the SUV briefly put the vehicle in reverse, parked it, and turned off its ignition.[2] The sedan did not move.

Weeks approached the sedan, and Ertmann approached the SUV. Before Ertmann reached the SUV, however, its passenger got out of the vehicle and approached him. The

of the Commonwealth's argument concerning the continuing validity of the previous waiver of Garrick's Fourth Amendment rights.

[2] Other vehicles were parallel-parked in front of the SUV, but no other vehicles were parked behind it.

passenger provided Ertmann with his identification and told him that he and the driver of the SUV were on their way home. As Ertmann talked to the passenger, Garrick, the driver of the SUV, also got out the vehicle.[3] When Ertmann asked Garrick if he had a driver's license or another form of identification, Garrick told him that he did not have either. Ertmann then asked Garrick if his driver's license had been suspended. Garrick answered affirmatively and provided his name and other identifying information to Ertmann.

When another officer who had arrived at the scene ran Garrick's name through an electronic criminal records system, the officer discovered that there was an active warrant for Garrick's arrest. Ertmann arrested Garrick based on this warrant and placed him in handcuffs. When Ertmann searched Garrick following his arrest, he found a prescription medication bottle containing pills in Garrick's pocket.[4] The bottle had the name of another individual on it rather than Garrick's name. Ertmann also found some crumpled currency and the keys to the SUV. After the search, Ertmann placed these items on the bumper of the SUV and took Garrick to the patrol cruiser.

At some point, Weeks decided to search the SUV for evidence pertaining to the distribution of controlled substances. When Weeks used the keys obtained from Garrick's pocket to open the locked glove compartment of the vehicle, he found a clear, plastic bag containing a white powdery substance that he believed was cocaine. Weeks also observed a handgun located partially under the back passenger seat of the SUV. After Ertmann seated Garrick in the back of the patrol cruiser, he assisted Weeks with his search of the vehicle.

---

[3] The SUV was owned by Garrick's girlfriend, and both parties stipulated that he had permission to drive the vehicle on the night in question.

[4] Although the record does not establish the type of pills contained in the medication bottle, the officers referred to them throughout the suppression hearing as "narcotics" without objection from defense counsel.

Ertmann found a backpack in the backseat of the SUV that contained latex gloves, unused containers made from the corners of plastic bags, baking soda, nail polish remover, and a substance commonly used to "cut" cocaine.

After Garrick was charged with possessing cocaine with the intent to distribute it in violation of Code § 18.2-248, he filed a motion to suppress the evidence obtained by the police. Garrick argued that he was unlawfully seized when Ertmann asked him for his identification and that the evidence obtained from the searches of his person and the SUV following his unlawful seizure should be suppressed. The Commonwealth responded that the police officers' initial interaction with Garrick was lawful, that his arrest was justified by the active warrant, and that the search of the SUV was reasonable in light of the totality of the circumstances.

The circuit court explained its decision concerning Garrick's suppression motion in a detailed opinion letter. First, the circuit court held that the officers had lawfully stopped the SUV and the sedan because they had reasonable suspicion to believe that both vehicles were blocking the roadway and thereby violating traffic regulations. The circuit court also explained that Garrick's initial interaction with Ertmann was consensual because he voluntarily left his vehicle and approached the officer. Furthermore, the circuit court held that the search of Garrick's person was justified by his arrest based on the active warrant.

The circuit court granted Garrick's suppression motion because it concluded that the search of the SUV was unlawful. Citing Arizona v. Gant, 556 U.S. 332 (2009), the circuit court explained that the officers could not search the SUV incident to Garrick's arrest because he was restrained in the patrol cruiser when they conducted the search. The circuit court also made the factual finding that Weeks began his search of the SUV at the same time that Garrick was searched incident to his arrest, and, therefore, that Weeks was unaware of the medication bottle and pills found in Garrick's pocket when he decided to search the vehicle. Consequently, the

- 4 -

circuit court held that the medication bottle and other items seized from Garrick's pocket could not be considered as factors supporting probable cause for the search.

Noting that "a person's presence in a high crime or high drug area without other corroborating factors does not create probable cause [to believe] that that person is committing a crime[,]" the circuit court concluded that the circumstances of the present case would fail to establish probable cause to support the search of the SUV even if the medication bottle and other items seized from Garrick were considered. Specifically, the circuit court emphasized that the officers did not observe Garrick engage in hand-to-hand transactions with others that could have been drug exchanges or observe any "furtive or secretive activity."

Following the circuit court's decision granting Garrick's suppression motion, the Commonwealth filed a petition for appeal with this Court and Garrick filed a petition for cross-appeal in response to the Commonwealth's petition. This Court granted the petitions and awarded an appeal based on the issues raised by both parties.

## II. ANALYSIS

When reviewing decisions involving motions to suppress on appeal, "we apply an established standard of review." Fauntleroy v. Commonwealth, 62 Va. App. 238, 244, 746 S.E.2d 65, 68 (2013) (quoting Murphy v. Commonwealth, 264 Va. 568, 573, 570 S.E.2d 836, 838 (2002)).

> A . . . claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review *de novo* on appeal. In making such a determination, we give deference to the factual findings of the [circuit] court and independently determine whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment.

Id. (quoting Murphy, 264 Va. at 573, 570 S.E.2d at 838-39). The appellant has the burden to show that the circuit court's decision concerning the suppression motion was reversible error. See id.

Under settled principles of appellate review, we view the evidence and all reasonable inferences fairly derived from it in the light most favorable to the prevailing party. See id. "[A]n appellate court must review the circuit court's findings of historical fact only for clear error, and . . . give due weight to inferences drawn from those factual findings." Commonwealth v. Redmond, 264 Va. 321, 327, 568 S.E.2d 695, 698 (2002); see also Ornelas v. United States, 517 U.S. 690, 699 (1996). In the context of this appeal, we view the evidence relevant to the assignments of error raised by the Commonwealth in the light most favorable to Garrick and the evidence relevant to the assignments of error raised by Garrick in the light most favorable to the Commonwealth.

On appeal, each party challenges different aspects of the searches involved in this case. Garrick contends that the search of his person was unlawful because the police officers had no reason to stop the SUV that he was driving or ask him for identification. The Commonwealth argues that the search of Garrick's person was justified by the active warrant for his arrest and that the officers had probable cause to search the SUV. Upon review, we agree with the Commonwealth's arguments.

## A. GARRICK WAS LAWFULLY SEARCHED INCIDENT TO HIS ARREST BASED ON THE ACTIVE WARRANT

Garrick's arguments concerning his cross-assignments of error relating to the search of his person are defeated by a recent decision from the Supreme Court of the United States.[5]

---

[5] While Utah v. Strieff, 136 S. Ct. 2056 (2016), was decided after this Court granted the parties' appeal in this case, both parties addressed Strieff in their appellate briefs and at oral argument. Furthermore, the parties noted that Strieff was pending before the Supreme Court at

Assuming without deciding that the officers violated Garrick's constitutional rights when they stopped his vehicle and asked him for his identification, pursuant to Utah v. Strieff, 136 S. Ct. 2056, 2059 (2016), the exclusionary rule does not require suppression of the evidence obtained during the search of Garrick's person following his arrest based on the active warrant.

In Strieff, a police officer unlawfully detained an individual when he stopped him without reasonable suspicion to justify the intrusion.[6] Id. at 2060. As part of the unlawful stop, the officer requested the individual's identification and relayed that information to a dispatch officer. Id. When the dispatch officer reported that an active warrant existed for the individual's arrest, the officer arrested him and searched his person incident to the arrest. Id. The officer found methamphetamine and drug paraphernalia during this search. Id.

The Supreme Court held that the evidence the officer seized from the individual was admissible because the "discovery of the arrest warrant attenuated the connection between the unlawful stop and the evidence seized . . . incident to arrest." Id. at 2064. In addressing the attenuation doctrine as an exception to the exclusionary rule, the Court explained that "[e]vidence is admissible when the connection between unconstitutional police conduct and the evidence is remote *or has been interrupted by some intervening circumstance*, so that 'the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained.'" Id. at 2061 (emphasis added) (quoting Hudson v. Michigan, 547 U.S. 586, 593 (2006)).

---

the suppression hearing before the circuit court and that the decision in that case would likely determine the outcome of the motion to suppress the evidence obtained from the search of Garrick's person.

[6] The Supreme Court assumed without deciding that the stop was not supported by the officer's reasonable suspicion of criminal activity because the State of Utah conceded that the stop was unlawful. See Strieff, 136 S. Ct. at 2062.

The Court noted that its analysis under the attenuation doctrine was guided by the three factors articulated in Brown v. Illinois, 422 U.S. 590 (1975). In addressing those factors, the Court stated:

> First, we look to the "temporal proximity" between the unconstitutional conduct and the discovery of evidence to determine how closely the discovery of evidence followed the unconstitutional search. Brown, 422 U.S. at 603. Second, we consider "the presence of intervening circumstances." Id. at 603-04. Third, and "particularly" significant, we examine "the purpose and flagrancy of the official misconduct." Id. at 604.

Strieff, 136 S. Ct. at 2062.

While the Court acknowledged that the officer discovered the contraband only minutes after the illegal stop, it explained that the second factor outlined in Brown, "the presence of intervening circumstances," strongly supported the admission of the evidence. Id. The Court held that the discovery of the warrant was a significant intervening circumstance and emphasized that the warrant predated the officer's investigation and was otherwise unrelated to the stop. Id. The Court explained that the warrant was a "judicial mandate" requiring the officer to arrest the individual and that the officer could lawfully search the individual as an incident of the arrest to ensure his personal safety. Id. at 2062-63. The Court also found that the officer's misconduct was not "purposeful or flagrant," noting that the unlawful stop was "an isolated instance of negligence that occurred in connection with a bona fide investigation." Id. at 2063.

Based on the analysis in Strieff, we conclude that the discovery of the active warrant for Garrick's arrest attenuated the connection between the evidence obtained from the search of his person and any potentially illegal conduct by the police. The present case is factually similar to Strieff. Like the officer in Strieff, Ertmann discovered an active warrant for Garrick's arrest during the course of his interaction with him. When Ertmann discovered this warrant, he had a duty to arrest Garrick and he could lawfully search Garrick's person incident to that arrest.

- 8 -

Moreover, the record in this case does not suggest that Ertmann and Weeks engaged in "purposeful or flagrant" misconduct. After observing two cars stopped in the roadway in a high crime area at night, the officers decided to investigate why the cars were blocking the road. While the officers may or may not have had the requisite level of suspicion to detain Garrick, their initial interaction with him occurred in the course of a routine investigation of a potential violation of traffic regulations. Like the officer in Strieff, the officers' conduct in this case was at most negligent.

For these reasons, we conclude that the exclusionary rule would not apply to the evidence seized from Garrick's person during the search incident to his arrest even if we assume that the officers had unlawfully stopped the SUV and asked Garrick for identification. As explained in Strieff, the discovery of the active warrant for Garrick's arrest sufficiently attenuated the evidence obtained in the search from any potentially illegal police activity. Accordingly, we hold that the circuit court did not err by refusing to suppress the evidence obtained from Garrick's person.

### B. PROBABLE CAUSE SUPPORTED THE SEARCH OF THE SUV

On appeal, the Commonwealth challenges the circuit court's decision to suppress the evidence obtained from the SUV. The Commonwealth contends that the search was supported by sufficient probable cause because the totality of the circumstances gave the officers reason to believe that evidence of drug distribution would likely be found inside of the vehicle. We agree.

#### 1. THE CIRCUIT COURT ERRED BY CONCLUDING THAT THE SEARCHES OCCURRED SIMULTANEOUSLY

As a preliminary matter, the Commonwealth contends that the circuit court erred by refusing to consider the evidence obtained from Garrick's person when it determined whether probable cause supported the search of the SUV. The Commonwealth argues that the medication

bottle, pills, and currency seized from Garrick strongly supported the search of his vehicle. While the circuit court refused to consider the medication bottle and other evidence because it concluded that Weeks began searching the SUV at the same time that Ertmann arrested and searched Garrick, the Commonwealth challenges this factual finding based on the testimony of the officers at the suppression hearing.

As previously stated, we "review the circuit court's findings of historical fact only for clear error, and . . . give due weight to inferences drawn from those factual findings." Redmond, 264 Va. at 327, 568 S.E.2d at 698. Although we are mindful of this deferential standard of appellate review, we conclude that the circuit court's factual conclusion concerning the timing of the search of the SUV is plainly wrong based upon our review of the record before us.

The factual determination at issue clearly conflicts with the testimony of Weeks. Weeks explicitly testified that he searched the SUV after Ertmann searched Garrick. Weeks testified that he saw Ertmann arrest Garrick, place him in handcuffs, and remove a bottle of prescription medication bearing another individual's name from his pocket. He then explained that he decided to search the vehicle based on these observations.

As a practical matter, Weeks could not have begun his search of the SUV before Ertmann searched Garrick. Ertmann testified that he found the medication bottle, currency, and the keys to the SUV when he searched Garrick's person following his arrest. Ertmann also testified that he placed those items on the bumper of the SUV after the search before he took Garrick to the police cruiser. Weeks testified that he retrieved the keys from the bumper before he searched the SUV. Although Weeks could not remember whether the doors to the SUV were locked before he began his search, he had to use the keys to the vehicle to open its locked glove compartment. As the officers did not possess the keys before Ertmann searched Garrick, Weeks could not have

- 10 -

used the keys to search the glove compartment of the SUV before the search of Garrick's person occurred.

We conclude that the circuit court erred by finding that Weeks searched the SUV at the same time that Ertmann searched Garrick. Weeks could not have searched the glove compartment of the vehicle without the keys obtained from the search of Garrick's person. Accordingly, we will consider the items seized from Garrick's person in our determination of whether probable cause supported the search of the SUV.

2. THE TOTALITY OF THE CIRCUMSTANCES SUPPORTED THE SEARCH

While "[t]he Fourth Amendment generally requires police to secure a warrant before conducting a search[,] . . . there is an exception to this requirement for searches of vehicles." Maryland v. Dyson, 527 U.S. 465, 466 (1999). Under this "automobile exception," an officer may search a vehicle without first obtaining a warrant authorizing the search when there is probable cause to believe that the vehicle contains evidence of criminal activity.[7] See Gant, 556

---

[7] We note that the circuit court also held that the officers could not have lawfully searched the SUV incident to Garrick's arrest under Gant. In Gant, the Supreme Court held that the "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search *or it is reasonable to believe the vehicle contains evidence of the offense of arrest.*" Gant, 556 U.S. at 351 (emphasis added).

> Presumably, [this] "reasonable to believe" standard requires less than probable cause, because otherwise Gant's evidentiary rationale would merely duplicate the "automobile exception," which the Court specifically identified as a distinct exception to the warrant requirement. Rather, the "reasonable to believe" standard probably is akin to the "reasonable suspicion" standard required to justify a Terry search.

Powell v. Commonwealth, 57 Va. App. 329, 339, 701 S.E.2d 831, 835 (2010) (quoting United States v. Vinton, 594 F.3d 14, 25 (D.C. Cir. 2010)).

Although Garrick was handcuffed and secured in the police cruiser when the officers searched the SUV, the Commonwealth could have argued that the search of the vehicle incident to Garrick's arrest was justified by the "reasonable to believe" standard set forth in Gant. On

- 11 -

U.S. at 347; United States v. Ross, 456 U.S. 798, 820-21 (1982); Carroll v. United States, 267 U.S. 132, 153 (1925).

"[P]robable cause exists when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" Jones v. Commonwealth, 277 Va. 171, 178, 670 S.E.2d 727, 731 (2009) (alteration in original) (quoting United States v. Grubbs, 547 U.S. 90, 95 (2006)). "Generally, 'the existence of probable cause is determined by examining the totality-of-the-circumstances.'" Anzualda v. Commonwealth, 44 Va. App. 764, 774, 607 S.E.2d 749, 754 (2005) (*en banc*) (quoting Janis v. Commonwealth, 22 Va. App. 646, 651-52, 472 S.E.2d 649, 652 (1996)). "Courts employ a 'common sense approach' not a 'hypertechnical, rigid, and legalistic analysis' when reviewing probable cause determinations." Powell, 57 Va. App. at 335, 701 S.E.2d at 833 (quoting Derr v. Commonwealth, 242 Va. 413, 421, 410 S.E.2d 662, 666 (1991)).

In determining whether probable cause exists, courts consider "what the totality of the circumstances meant to police officers trained in analyzing the observed conduct for purposes of crime control." Brown v. Commonwealth, 270 Va. 414, 419, 620 S.E.2d 760, 762 (2005) (quoting Taylor v. Commonwealth, 222 Va. 816, 820-21, 284 S.E.2d 833, 836 (1981)). "An officer is entitled to view the circumstances confronting him in light of his training and experience, and he may consider any suspicious conduct of the suspected person." Atkins v. Commonwealth, 57 Va. App. 2, 19, 698 S.E.2d 249, 257 (2010) (citations omitted). However, an individual's presence in a high crime area, standing alone, cannot establish the probable cause required to support a search. See, e.g., Brown v. Texas, 443 U.S. 47, 52 (1979) ("The fact that

appeal, however, the Commonwealth only argued that the search was justified under the automobile exception to the warrant requirement. Accordingly, we confine our analysis to that issue and determine whether the circuit court erred by concluding that the search was not supported by sufficient probable cause.

appellant was in a neighborhood frequented by drug users, standing alone, is not a basis for concluding that appellant himself was engaged in criminal conduct.").

In the present case, the totality of the circumstances established sufficient probable cause to support the search of the SUV. Ertmann and Weeks observed the SUV driven by Garrick and another vehicle stopped close together in a high crime area at night. The vehicles were stopped side-by-side with their engines running, facing the same direction. Both Ertmann and Weeks testified that individuals frequently visited the area to use drugs. Additionally, the officers explained that the area was industrial rather than residential and that the businesses in the area were closed when they encountered the vehicles. The time of the evening, the character of the surrounding area, and the positioning of the vehicles implied that their occupants may have potentially been engaged in criminal activity.[8]

Those circumstances were further supported after the stop by the medication bottle, pills, and currency found in the proper search of Garrick's person incident to his arrest. As the pills in the bottle were prescribed to another individual, the officers could reasonably suspect that Garrick possessed them illegally.[9] The officers also could have inferred that the medication and the crumpled currency found in Garrick's pocket may have been obtained in a recent drug transaction and that further evidence pertaining to the distribution of narcotics would be found in the SUV driven by Garrick.

Additionally, both Garrick and his passenger attempted to divert Ertmann's attention from the SUV when he initially approached it. See Castenada v. Commonwealth, 7 Va. App.

---

[8] As previously stated, we do not express an opinion as to whether these facts created a reasonable suspicion of criminal activity that would have justified a stop of the vehicles.

[9] While it is irrelevant to our analysis of the probable cause supporting the search of the SUV, we note that Garrick told a detective who arrived at the scene after the searches at issue were conducted that he found the medication bottle in the road earlier that night.

574, 583, 376 S.E.2d 82, 87 (1989) (*en banc*). When the officers activated the emergency lights of their police cruiser and stopped the sedan to investigate a potential traffic violation, the passenger of the SUV driven by Garrick immediately got out of the vehicle and approached Ertmann without being asked to do so. Shortly after the passenger approached Ertmann, Garrick also approached the officer before Ertmann asked him to exit the vehicle. When this diversionary behavior was viewed in conjunction with the pills found on Garrick's person and the other circumstances of this case, the officers could have concluded that evidence pertaining to drug distribution would likely be found in the SUV.

We conclude that the totality of the circumstances established sufficient probable cause to support the search of the SUV. The particular positioning of the cars in a high crime area at night suggested that their occupants may have been engaged in criminal drug-related activity, and that suspicion was corroborated by evidence lawfully seized from Garrick's person and his behavior following the traffic stop. Therefore, we conclude that the evidence obtained from the search of the SUV should not have been suppressed.

### III. CONCLUSION

In summary, we hold that the search of Garrick's person was justified by his arrest based on the active warrant. Pursuant to Strieff, we conclude that the discovery of the warrant sufficiently attenuated the connection between the evidence obtained through the search and any potentially illegal police activity. Additionally, we hold that the circuit court erred by suppressing the evidence obtained from the search of the SUV. The totality of the circumstances of this particular case provided sufficient probable cause to support the search of the vehicle.

For these reasons, we reverse the circuit court's decision suppressing the evidence obtained from the search of the SUV and remand this case for further proceedings consistent with this opinion, if the Commonwealth so chooses.

<u>Reversed and remanded.</u>