COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Athey, Chaney and Raphael
Argued by teleconference


COMMONWEALTH OF VIRGINIA
                                               MEMORANDUM OPINION[*] BY
v.        Record No. 0911-22-1               JUDGE CLIFFORD L. ATHEY, JR.
                                                   NOVEMBER 9, 2022
ANTONIO VICTOR OLIVER, JR.


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
A. Bonwill Shockley, Judge

Alicia M. LeClair, Assistant Commonwealth's Attorney (Colin D.
Stolle, Commonwealth's Attorney, on brief), for appellant.

Shawn M. Mihill (Anderson & Associates, PC, on brief), for
appellee.


The Commonwealth of Virginia ("Commonwealth") appeals from an interlocutory order

in the Circuit Court of the City of Virginia Beach ("trial court") granting a motion to suppress

the results of a DNA analysis performed on the appellee, Antonio Victor Oliver, Jr. ("Oliver"),

during the course of his police interview.  The Commonwealth assigns error to the trial court's

decision to grant the motion to suppress on two grounds:  (1) that Oliver was not in custody at

any point during the interview and, (2) that he voluntarily participated in both the interview and

the DNA test.  The Commonwealth also contends that the May 16, 2022 transcript was timely

filed in this Court and is therefore part of the record for our consideration.  Based on the

following, we deem the transcript timely filed and subject to our consideration.  Further, we

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

reverse the decision of the trial court to suppress the evidence and remand the case to the trial court for further proceedings consistent therewith.

## I. BACKGROUND

During an investigation into a child sexual abuse case, Oliver was asked to come to the Virginia Beach Police Department for an interview on March 18, 2021. Although Oliver was a suspect in the investigation, he had not yet been charged with any crime when he arrived for the interview. Oliver voluntarily agreed to be interviewed and proceeded to follow Virginia Beach Police Detective Anna Webb ("Detective Webb") back to the interview room. Detective Webb was one of two Virginia Beach Police Department detectives present during the interview. Virginia Beach Police Detective Gerard Dalina ("Detective Dalina") also participated in the interview, and both detectives were dressed in plain clothes. Just prior to commencing the interview, Detective Webb made it clear to Oliver that Oliver could leave at any time, and even after closing the door, she stated that he could open the door at any time and "you can leave at any time." Also, Oliver was not physically restrained at any point during the interview.

The interview was recorded by video and lasted for approximately two hours. Toward the end of the interview, Detective Webb asked Oliver if he would consent to voluntarily undergo a polygraph examination, and Oliver responded: "Can I speak to a lawyer about that?" Webb responded, "Yep, that's up to you, that's your right." Oliver was not questioned further about the polygraph examination, but he was subsequently asked if he would consent to a buccal swab for DNA analysis. Oliver consented to perform the buccal swab test and was subsequently swabbed for DNA.

Oliver was eventually indicted for consensual intercourse with a child over the age of fifteen in violation of Code § 18.2-371 and for taking indecent liberties while in a custodial role in violation of Code § 18.2-370.1. Before trial, Oliver filed a motion to suppress evidence

stemming "from an interrogation and a DNA collection that took place on March 18[, 2021]," alleging violations of his Fourth, Fifth, Sixth, and Fourteenth Amendment rights under the United States Constitution. A hearing was held on the motion to suppress on May 16, 2022, and following the presentation of the Commonwealth's single exhibit (a video recording of the interview), the trial court granted the motion to suppress because Oliver "asked about an attorney" during the course of his interrogation. On May 19, 2022, there was a second hearing in order "to obtain clarification" on the prior May 16 trial court ruling that originally granted the motion to suppress. During the May 19 hearing, the trial court clarified its prior ruling by stating the motion to suppress was being granted because Oliver's participation in the interview became involuntary after he asked to speak to a lawyer about the polygraph test. Thus, any testimonial or other evidence obtained after Oliver's question concerning consulting with an attorney before taking a polygraph test was suppressed. The Commonwealth then timely appealed the interlocutory ruling pursuant to Code § 19.2-398.

In the July 28, 2022 order of this Court awarding an appeal, both Oliver and the Commonwealth were requested to brief the issue of "whether the May 16, 2022 transcript was timely filed on June 13, 2022 (as indicated by the clerk in the table of contents in the transmittal of the record)[,] or on June 14, 2022 (as indicated by the date-stamp on the transcript itself)."[1] On August 4, 2022, the trial court subsequently entered an order clarifying the filing date of the transcript "as being filed on 2022 JUN 13, during regular business hours as the transcript was scanned on the 13th of June, 2022." The court further ordered that the date entered "for the

---

[1] The dissent alleges that the clerical correction in *Lamb v. Commonwealth*, 222 Va. 161 (1981), was supported in the record by the court reporter's testimony, while here, the trial court's order was based "on an unsupported assertion about a purported fact not" in the record regarding the date of the transcript. The dissent states that "the Clerk's machine-printed date stamp" is "the authoritative source of a document's filing information." However, the table of contents of the record similarly certifies that the filing date is on "06/13/2022." The record would support the conclusion that the actual date of filing was in dispute.

transcript of May 16, 2022, be corrected" to reflect this.  On appeal we consider both the trial court's decision to suppress and whether the transcript was timely filed and therefore available for our consideration.

## II.  ANALYSIS

### A.  *Standard of Review*

On an appeal from an order to suppress evidence, the evidence is viewed in the most favorable light to the prevailing party, and "[w]e will not reverse the trial judge's decision unless it is plainly wrong." *Commonwealth v. Grimstead*, 12 Va. App. 1066, 1067 (1991).  On appeal, the issue of "whether a defendant clearly requested an attorney during a custodial interrogation is a mixed question of law and fact." *Commonwealth v. Redmond*, 264 Va. 321, 326 (2002).  This issue requires applying a "constitutional standard to the facts of a particular case, and in this context *de novo* review of that question is appropriate." *Id.* (citing *United States v. Bajakajian*, 524 U.S. 321, 336-37 n.10 (1998)).  Whether *Miranda v. Arizona*, 384 U.S. 436 (1966), warnings were required during a police interview is a mixed question of law and fact and is reviewed de novo on appeal. *See Keepers v. Commonwealth*, 72 Va. App. 17, 33 (2020) (citing *Spinner v. Commonwealth*, 297 Va. 384, 392 (2019)).  Similarly, the "legal question of voluntariness" is reviewed de novo on appeal. *See id.* at 40.

### B.  *The trial court erred in granting the motion to suppress the evidence because Oliver was not in custody at any point during the interview.*

The Commonwealth contends that because Oliver was not in custody, the trial court erred in granting the motion to suppress.  Conversely, Oliver responds that the interrogation was

custodial in nature, and he was not advised of his *Miranda* rights. We agree with the Commonwealth.[2]

The United States Supreme Court's holding in *Miranda* determined that when one is subject to a custodial interrogation, he has the privilege to be protected against incriminating himself under the Fifth and Fourteenth Amendments and has the right to remain silent and have an attorney present. 384 U.S. at 444. "Pursuant to the Fifth Amendment of the United States Constitution, law enforcement officers must inform a suspect in a custodial interrogation of certain rights." *Stevens v. Commonwealth*, 283 Va. 296, 302 (2012) (citing *Commonwealth v. Hilliard*, 270 Va. 42, 49 (2005)). A series of factors are used to determine whether an individual is in custody; these factors include: "the familiarity or neutrality of the surroundings, the number of officers present, the degree of physical restraint, the duration and character of the interrogation, the presence of probable cause to arrest, and whether the suspect has become the focus of the investigation." *Cherry v. Commonwealth*, 14 Va. App. 135, 140 (1992).

During Oliver's interview, there were only two detectives present, he was not physically restrained, and it was made clear to him that he could leave the interview at any time. Considered together, these circumstances do not indicate that Oliver was held in custody during the interview. Further, Oliver's question asking if he could "speak to a lawyer" about taking a polygraph amounted to a question "about" counsel, rather than a request for counsel. *Redmond*, 264 Va. at 330 (finding that the question "Can I speak to my lawyer? I can't even talk to [a] lawyer before I make any kinds of comments or anything?" was not a request for counsel);

---

[2] We note that the Commonwealth's opening brief changed the text of the two assignments of error included in the Commonwealth's petition for appeal. The proper way to change an assignment of error is to seek leave of court. *See Whitt v. Commonwealth*, 61 Va. App. 637, 659 (2013) (en banc). But the changes here are not fatal to the appeal because they do not "change the substance of the error[s] alleged." *Id.* (quoting *Allstate Ins. Co. v. Gauthier*, 273 Va. 416, 418 n.5 (2007)). The original assignments of error, even if not amended, sufficed to warrant reversal.

*Davis*, 512 U.S. at 462 (stating "[m]aybe I should talk to a lawyer" was not considered to be a request for counsel).

Because Oliver was not in custody, there was no requirement under the Fifth Amendment to provide Oliver with *Miranda* warnings at the start of the interview. Accordingly, we agree that the trial court erred in granting the motion to suppress because Oliver was not in custody.

> C. *The trial court erred in granting the motion to suppress the evidence because the interview remained voluntary for its entire duration.*

The Commonwealth contends that the trial court erred in granting the motion to suppress because the interview remained voluntary even after Oliver asked about a lawyer. Oliver argues that the "request for an attorney necessarily ended the voluntariness of his cooperation with the interview progress." Oliver extrapolates that on these grounds, the DNA sample was properly excluded because he requested an attorney prior to the DNA collection. We disagree with Oliver.

"The Commonwealth has the burden to prove, by a preponderance of the evidence, that a defendant's confession was freely and voluntarily given." *Bottenfield v. Commonwealth*, 25 Va. App. 316, 323 (1997). "Whether . . . a statement was voluntary or the result of coercive police activity is a legal question to be determined from a review of the totality of the circumstances." *Keepers*, 72 Va. App. at 40-41 (alteration in original) (these circumstances include "details of the interrogation," the accused's characteristics, whether the statement of the accused was made freely or whether his will was overcome). Likewise, "[w]hen evaluating the conduct of the police, we 'must consider the interrogation techniques employed, including evidence of trickery and deceit, psychological pressure, threats or promises of leniency, and duration and circumstances of the interrogation.'" *Id.* at 41 (quoting *Terrell v. Commonwealth*, 12 Va. App. 285, 291 (1991)).

The trial court suppressed the DNA evidence and any statements made by Oliver after his question because the trial court held that the interview ceased to be voluntary after Oliver asked if he could "speak to a lawyer about that." In assessing whether the DNA evidence and further statements were involuntary, we must employ a totality of the circumstances analysis. Initially, Oliver voluntarily went to the police station to answer questions, voluntarily remained in the interview room during the interview, continued to respond to questions from the officers, and after asking if he could talk to a lawyer about taking a polygraph test, Oliver acquiesced to a buccal swab. Based on a totality of the circumstances analysis, the nature of this interview simply does not reflect circumstances that would amount to a coercive interrogation. Additionally, the conduct of the detectives here did not amount to police conduct that was deceitful, threatening, or psychologically challenging. For those reasons, the motion to suppress the DNA was wrongfully granted because the interview remained voluntary throughout.

D. *Under Code § 8.01-428(B), this Court grants leave for the trial court to correct the record as to the date of the filing of the transcript.*

The Commonwealth urges us to consider that the transcript from May 16 was timely filed in the Virginia Beach Clerk's Office and that it was solely due to a clerical error that it shows a later timestamp date. Oliver argues that the entry of a timestamp is not a type of clerical error encompassed by the language of Code § 8.01-428(B) and that the trial court had no authority to correct this mistake because the trial court did not request leave from this Court. In considering these arguments and the discretion given to this Court in granting leave for the correction of clerical errors, we hold that the transcript is timely filed pursuant to the trial court's order correcting the error.

Code § 8.01-428(B) stipulates when and how a trial court may correct a clerical mistake. The Code provides that:

> Clerical mistakes in all judgments or other parts of the record and errors therein arising from oversight or from an inadvertent omission may be corrected by the court at any time on its own initiative or upon the motion of any party and after such notice, as the court may order. During the pendency of an appeal, such mistakes may be corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending such mistakes may be corrected with leave of the appellate court.

Code § 8.01-428(B).

Code § 8.01-428(B) allows for a trial court to make a correction of certain clerical mistakes "at any time," even by "its own initiative." In *Lamb v. Commonwealth*, 222 Va. 161 (1981), the Supreme Court granted leave to the trial court *ex post facto*. *See id.* at 166 (holding "that the transcript shall be corrected in the manner ordered by the trial court" on appeal)[3]; *see also Belew v. Commonwealth*, 284 Va. 173, 178, 181 (2012) (finding that Code § 8.01-428(B) allowed for the entry of an omitted transcript prior to the filing of petition for appeal in the Court of Appeals).

The issue of whether the May 16 transcript was timely filed depends on whether the case was docketed for appeal before August 4, 2022. The petition for appeal was received on June 24, 2022. This Court awarded an appeal on July 28, 2022. The trial court issued its order regarding the date correction on August 4, 2022. For Code § 8.01-428(B) purposes, "an appeal 'is docketed in the appellate court' when the petition for appeal is received in the appellate court." *Belew*, 284 Va. at 178, 181 (finding that "the circuit court had authority under the statute to correct the error prior to Belew's filing of her petition for appeal in the Court of Appeals").

Based on these facts, for the trial court to independently issue its order correcting the record, it would have needed to issue its order prior to June 24, 2022, the date the petition for appeal was received. However, *Lamb* offers a guiding principle for understanding when this

---

[3] Further, the Court noted that "to hold otherwise would be to elevate form over substance." *See Lamb*, 222 Va. at 166.

Court has the authority to grant leave to the lower court. In *Lamb*, the Supreme Court affirmed the trial court's order to correct the transcript, even though the case was already docketed for appeal, effectively granting *ex post facto* leave on the grounds that there is no time limit to grant leave while the appeal is pending. *See Lamb*, 222 Va. at 166. Likewise, in the later Supreme Court case, *Belew*, the Court determined that "the circuit court had authority under the statute to correct the error" before the petition was filed in the Court of Appeals. *Belew*, 284 Va. at 181. The distinction in the case at bar is that the trial court order correcting the date was issued following this Court's receipt of the petition for appeal. Because *Belew* does not go so far as to challenge this Court's ability to grant "*ex post facto* leave" in a case presenting a clerical error, as noted by the dissent in *Belew*, we agree that the holding of *Lamb* applies here. *Id.* at 182 (Powell, J., dissenting). With this in mind, we grant leave to the trial court in receiving its order and find that the order properly corrects the record and permits our review.

## III. CONCLUSION

For the aforementioned reasons, we find that the suppression of the DNA evidence was plainly wrong, and we reverse and remand to the trial court for further proceedings.

*Reversed and remanded.*

Chaney, J., dissenting.

In this pretrial appeal of the trial court's order granting Oliver's suppression motion,[4] the majority rescues the Commonwealth's appeal and reverses the suppression order—despite multiple procedural defaults that would be fatal to the appeal under a proper application of the relevant statutes and Rules of Court. In accordance with the controlling legal standards, I would hold that the Commonwealth waived its assignments of error in two ways: (1) by failing to timely file the indispensable suppression hearing transcript and (2) by making unauthorized substantive alterations to the second assignment of error in the granted petition for appeal.

Even if the Commonwealth's waivers are disregarded, both assignments of error fail as grounds for reversing the trial court's suppression order. Assuming *arguendo* that the Commonwealth did not waive its first assignment of error regarding the custodial nature of Oliver's interrogation, I would hold that the first assignment of error fails as a basis for reversing the trial court's judgment because the trial court did not make the ruling alleged to be erroneous in the first

---

[4] Code § 19.2-398(A)(2) provides that in a felony case, the Commonwealth may take a pretrial appeal from:

> An order of a circuit court prohibiting the use of certain evidence at trial on the grounds such evidence was obtained in violation of the provisions of the Fourth, Fifth or Sixth Amendments to the Constitution of the United States or Article I, Section 8, 10 or 11 of the Constitution of Virginia prohibiting illegal searches and seizures and protecting rights against self-incrimination, provided the Commonwealth certifies that the appeal is not taken for purpose of delay and that the evidence is substantial proof of a fact material in the proceeding.

Code § 19.2-398(A)(2). If the Commonwealth appeals pretrial pursuant to Code § 19.2-398, "the defendant may cross appeal from any orders from which the Commonwealth may appeal, pursuant to § 19.2-398." Code § 19.2-401. Although Code § 19.2-408 provides that no further *pretrial* appeal shall lie to the Virginia Supreme Court from this Court's decision, Code § 19.2-409 provides that "[s]uch finality of the Court of Appeals' decision shall not preclude a defendant, if he is convicted, from requesting the Court of Appeals or Supreme Court on direct appeal to reconsider an issue which was the subject of the pretrial appeal."

assignment of error. Assuming *arguendo* that the Commonwealth did not waive its second assignment of error regarding the voluntariness of the DNA collection from Oliver, I would hold that the trial court's presumptively correct suppression of the DNA evidence should be affirmed because it is supported by the application of the law to the evidence viewed in the light most favorable to the defendant, the prevailing party below.

The majority's opinion:

(1) erroneously holds that the trial court properly modified the filing date on the suppression hearing transcript;

(2) erroneously grants retroactive leave for the trial court to make a purported correction to the transcript's filing date;

(3) erroneously holds that the indispensable suppression hearing transcript was timely filed;

(4) erroneously ignores the fact that the trial court did not make the ruling alleged to be erroneous in the Commonwealth's first assignment of error;

(5) erroneously holds that the Commonwealth's unauthorized alterations to its second assignment of error are non-substantive changes and not fatal to the appeal;

(6) erroneously holds that the Commonwealth's original assignments of error suffice as a basis for reversal;

(7) erroneously holds that Oliver voluntarily consented to the buccal swab search for DNA samples when a rational fact-finder could find from the evidence that Oliver's consent to the buccal swab search was not voluntary; and

(8) erroneously holds that the trial court's suppression of the DNA evidence was plainly wrong.

Therefore, I respectfully dissent.

## I. The Suppression Hearing Transcript was Not Timely Filed.

In this pretrial appeal, filed pursuant to Code § 19.2-398, the transcript of a proceeding is a part of the record on appeal when it is timely filed in the trial court in accordance with Code § 19.2-405 and Rule 5A:8. "When the appellant fails to ensure that the record contains transcripts

- 11 -

or a written statement of facts necessary to permit resolution of appellate issues, *any assignments of error affected by such omission will not be considered*." Rule 5A:8(b)(4)(ii) (emphasis added).

Here, the transcript of the suppression hearing is not included in the record on appeal because it was not timely filed. Code § 19.2-405, which applies only to pretrial appeals, provides:

> The transcript or written statement of facts shall be filed with the clerk of the circuit court from which the appeal is being taken, no later than 25 days following entry of the order of the circuit court. Upon motion of the Commonwealth, the Court of Appeals may grant an extension of up to 45 days for filing the transcript or written statement of facts for good cause shown.

The Commonwealth appealed the trial court's suppression order entered on May 19, 2022. Therefore, under Code § 19.2-405, the Commonwealth was required to file the transcript of the May 16, 2022 suppression hearing within twenty-five days of May 19th, no later than June 13, 2022. However, the Clerk's machine-printed date stamp on the face of the suppression hearing transcript shows that the transcript was filed one day late, on June 14, 2022.

The Clerk's filing date stamp on the face of the suppression hearing transcript states:

FILED
VA BEACH CIRCUIT COURT
**2022 JUN 14 AM 12:48**
TINA E. SINNEN, CLERK
BY _____ D.C.

The deputy clerk completed the Clerk's machine-printed date stamp with a handwritten signature attesting to the accuracy of the filing information provided therein. In accordance with this Court's standard of review, when the record evidence and the reasonable inferences therefrom are taken in the light most favorable to Oliver, as the prevailing party below, the Clerk's filing date stamp establishes that the suppression hearing transcript was filed on June 14, 2022. *See Williams & Connolly, L.L.P. v. People for Ethical Treatment of Animals, Inc.*, 273 Va. 498, 512

- 12 -

(2007) (recognizing the Clerk's date stamp as the authoritative source of a document's filing information).

Notwithstanding clear evidence that the suppression hearing transcript was untimely filed, this Court granted the Commonwealth's petition for appeal on July 28, 2022. In the order granting the petition for appeal, this Court directed the parties as follows:

> The parties should also brief whether the May 16, 2022 [suppression hearing] transcript was timely filed on June 13, 2022 (as indicated by the clerk in the table of contents in the transmittal of the record) or on June 14, 2022 (as indicated by the date-stamp on the transcript itself), and if it was filed on June 14, whether the order from which the appeal is taken must be affirmed on the ground that the transcript is indispensable and was not filed within the twenty-five days required by Code § 19.2-405.

*Commonwealth v. Oliver*, No. 0911-22-1 (Order dated July 28, 2022). A few days after this Court entered the order granting the Commonwealth's petition for appeal, the trial court *sua sponte* entered an order that purports to correct the filing date of the suppression hearing transcript.

On August 8, 2022, the circuit court clerk transmitted to this Court a purported addendum to the record on appeal, which included a purported circuit court order dated August 4, 2022 ("the purported correction order").[5] The purported correction order states:

> On the Court's initiative for clarification of the filing date of the transcript of the May 16, 2022, court hearing, it appearing that the filed date of the transcript was incorrect in showing it was filed on 2022 JUN 14 AM 12:48 and should actually be reflected as being filed on 2022 JUN 13 during regular business hours as the transcript

---

[5] The purported addendum including the purported correction order is not part of the record in this appeal because—in addition to the fact that the trial court lacked the power to render the order—this Court did not award a writ of *certiorari* to allow enlargement of the record to include the purported correction order. "After the record has been transmitted to this Court pursuant to [the Rules of Court] and an appeal has been granted, the record on appeal cannot be enlarged except by our award of a writ of *certiorari* under Code § 8.01-[675.4]." *Watkins v. Commonwealth*, 26 Va. App. 335, 341 (1998) (first alteration in original) (quoting *Godfrey v. Commonwealth*, 227 Va. 460, 465 (1984)). Here, the circuit court clerk transmitted the record to this Court on July 5, 2022, and the appeal was granted on July 28, 2022. Subsequently, this Court did not issue a writ of *certiorari* to authorize enlargement of the record by the addition of the purported correction order.

was scanned on the 13th of June, 2022. It is hereby ORDERED that date filed in for the transcript of May 16, 2022, be corrected to reflect the transcript was filed on 2022 JUN 13.

The purported correction order is not part of the record in this appeal because the trial court had no power under Code § 8.01-428(B) to make the purported correction of the filing date of the suppression hearing transcript. Code § 8.01-428(B) authorizes trial courts to correct clerical mistakes in the record "and errors therein arising from oversight or from an inadvertent omission." "The court has the power to correct the record under Code § 8.01-428(B) only 'when the record clearly supports such corrections.'" *School Bd. of Lynchburg v. Caudill Rowlett Scott, Inc.*, 237 Va. 550, 555 (1989) (quoting *Cutshaw v. Cutshaw*, 220 Va. 638, 641 (1979)). Here, the record does not clearly support the purported correction of the clerk-certified, machine-printed filing date on the suppression hearing transcript. The Commonwealth contends that the June 13, 2022 filing date stated on the table of contents of the digital record shows that the suppression hearing transcript was timely filed on June 13, 2022. But this entry in the table of contents appears to be erroneous in light of the Clerk's filing date stamp showing June 14, 2022, as the filing date of the suppression hearing transcript. The filing date contained in the Clerk's machine-printed date stamp was generated and recorded *contemporaneously* with the filing of the transcript in the trial court, in contrast with the filing date that was *subsequently* recorded in the digital record's table of contents. Taking the record evidence and the reasonable inferences therefrom in the light most favorable to Oliver, the prevailing party below, the filing date recorded in the digital record's table of contents is a clerical mistake.

The trial court failed in its attempt to change the transcript filing date from June 14, 2022—the filing date attested to on the Clerk's filing date stamp—to June 13, 2022, by its purported correction order. The trial court's stated basis for this change is the alleged fact that the transcript was *scanned*—not filed—on June 13, 2022. However, this purported fact

- 14 -

regarding the scan date is wholly outside the record. The record is devoid of evidence to support a finding that the suppression hearing transcript was "scanned" or filed on June 13, 2022, and that the June 14, 2022 filing date attested to by a deputy clerk on the Clerk's filing date stamp is a clerical mistake or error "arising from oversight or from an inadvertent omission." *See* Code § 8.01-428(B). Therefore, because the record does not clearly support the purported correction of the suppression hearing transcript's filing date, the trial court had no power to render the purported correction order. *See School Bd. of Lynchburg*, 237 Va. at 555. Thus, the purported correction order is void *ab initio* and a nullity. *See Burrell v. Commonwealth*, 283 Va. 474, 480 (2012) (holding that an order entered without the power to render it is void *ab initio*). As a nullity, the purported correction order is not part of the record in this appeal, and the majority erred in considering it.

In addition to its *ultra vires* entry of the purported correction order, the trial court had no jurisdiction to enter the purported correction order. During the pendency of an appeal, Code § 8.01-428(B) authorizes trial courts to correct clerical mistakes and errors arising from oversight or inadvertent omission "*before the appeal is docketed* in the appellate court, *and thereafter* while the appeal is pending such mistakes may be corrected *with leave of the appellate court.*" (Emphasis added). Here, the appeal was docketed on June 24, 2022, when the petition for appeal was filed. *See Belew v. Commonwealth*, 284 Va. 173, 178 (2012) ("[A]n appeal 'is docketed in the appellate court' when the petition for appeal is received in the appellate court." (quoting *Lamb v. Commonwealth*, 222 Va. 161, 165 (1981))). When the appeal was docketed in this Court on June 24, 2022, this Court acquired jurisdiction over the case and the trial court's jurisdiction ceased. *See Frazer v. Frazer*, 23 Va. App. 358, 378-80 (1996). Thus, the trial court had no jurisdiction to enter the purported correction order dated August 4, 2022, without leave of this Court. *Cf. Belew*, 284 Va. at 179 ("[T]he circuit court granted Belew's motion to make the

- 15 -

Missing Transcript part of the record prior to the filing of her petition for appeal and *while it had jurisdiction to do so under the statute[, Code § 8.01-428(B)]*." (emphasis added)).

The majority erroneously purports to remedy this jurisdictional defect by granting retroactive leave for the trial court's entry of the purported correction order.[6] The majority's reliance on *Lamb* to grant such leave is misplaced. In *Lamb*, our Supreme Court, in effect, granted retroactive leave to the trial court, pursuant to Code § 8.01-428(B), to correct a transcript that demonstrably included an "obvious error" in wording. *Lamb*, 222 Va. at 164. In *Lamb*, the trial court's finding that the court reporter had incorrectly transcribed "Lee" as "me" was supported by the court reporter's testimony that she had incorrectly transcribed her notes and had typed "me" when the correct word was "Lee." *Id*. at 163. Unlike the record-supported clerical correction in *Lamb*, this trial court's purported correction order was based on an unsupported assertion about a purported fact that is not in the record, i.e., that "the transcript was scanned on the 13th of June, 2022." The source of this purported fact is unknown, and its meaning and relevance are unclear. The purported fact that "the transcript was scanned on the 13th of June, 2022" is unclear because, without more, it fails to establish that the transcript was filed in the clerk's office on that date. "The transcript was scanned on the 13th of June, 2022" could mean only that the creation date of the PDF containing the transcript is June 13, 2022. If that PDF was created prior to filing by the transcript preparer or the Commonwealth, then the purported fact that the transcript was scanned on June 13, 2022, sheds no light whatsoever on the actual filing date. The record does not support the trial court's assertion that the alleged scan date is the filing date of the transcript. Because the record does not clearly support the trial court's purported

---

[6] Although the Commonwealth failed to file a proper motion requesting that this Court grant leave to the trial court to correct the record pursuant to Code § 8.01-428(B), the majority considered and granted the request that was improperly set forth in the Commonwealth's reply brief.

- 16 -

correction of the filing date of the suppression hearing transcript, the trial court could not lawfully modify the filing date. Thus, the record does not support the majority's conclusion that "the order properly corrects the record and permits our review."

## II. THE TRANSCRIPT IS INDISPENSABLE FOR APPELLATE REVIEW.

The late-filed transcript of the suppression hearing is indispensable to enable this Court to consider the Commonwealth's assignments of error. *See Turner v. Commonwealth*, 2 Va. App. 96, 99 (1986) ("If the record on appeal is sufficient in the absence of the transcript to determine the merits of the appellant's allegations, we are free to proceed to hear the case."). Notably, in accordance with its duty of candor, the Commonwealth acknowledged to this Court during oral argument that the suppression hearing transcript is indispensable in this appeal. The suppression hearing transcript is necessary (1) to inform this Court of the evidence that was admitted and the arguments that were made at the suppression hearing and (2) to enable this Court to review the trial court's factual findings and rulings of law. However, because the late-filed transcript is not included in the record on appeal, this Court cannot ascertain and review the entire basis of the trial court's order granting Oliver's suppression motion. Therefore, under the rules governing appeals in this Court, the Commonwealth has waived its assignments of error and this Court should not consider them.[7] *See* Rule 5A:8(b)(4)(ii).

---

[7] In light of the Commonwealth's failure to ensure that the record contains the indispensable transcript of the suppression hearing, the Commonwealth's petition for appeal was improvidently granted on July 28, 2022—before the trial court entered the purported correction order on August 4, 2022.

III. FATALLY FLAWED ASSIGNMENTS OF ERROR

A. The Flawed First Assignment of "Error"

The trial court did not make the ruling alleged to be erroneous in the Commonwealth's first assignment of error. The Commonwealth's first assignment of error, as stated in the opening brief, is:

> The trial court erred in granting the motion to suppress the evidence because the Appellee was not in custody at any point during the interview.

Op. Br. at 3. However, at a hearing held on May 19, 2022, (three days after the suppression hearing) to clarify the trial court's ruling granting Oliver's suppression motion, the trial court made the explicit finding that "because he was told he could leave and he could open the door, that it's *non*custodial."[8] (Emphasis added). Subsequently, the Commonwealth requested further clarification.

> THE COMMONWEALTH: Just to clarify, you're holding that the defendant was never in custody at any point?
>
> THE COURT: Well, the interview was *non*custodial, so I guess that means he *wasn't* in custody.

(Emphasis added). Clearly, the trial court did not make the ruling alleged to be erroneous in the Commonwealth's first assignment of "error."[9] Therefore, the first assignment of error fails as a basis for reversing the trial court's judgment.

---

[8] The transcript of the May 19, 2022 hearing was timely filed on May 24, 2022.

[9] Whether the interrogation was custodial should not be considered in this pretrial appeal because Oliver did not cross appeal the trial court's determination that the interrogation was non-custodial. *See* Code § 19.2-401 (allowing, but not requiring, the defendant to cross appeal pretrial when the Commonwealth files a pretrial appeal pursuant to Code § 19.2-398).

B.  Waiver of the Second Assignment of Error

The Commonwealth made improper substantive alterations to the second assignment of error in the granted petition for appeal, thereby waiving the issue raised in the second assignment of error.  The Commonwealth's second assignment of error in the granted petition for appeal states:

> The trial court erred in granting the motion to suppress the evidence because the interview was not required to cease when the respondent said "Can I speak to a lawyer about that" when asked if he would consent to a polygraph examination as he was not in custody and the question was not a demand, request, or assertion.

Petition for Appeal at 2.  In the Commonwealth's opening brief, the altered second assignment of error states:

> The trial court erred in granting the motion to suppress the evidence because the interview remained voluntary for its entire duration.

Op. Br. at 3.  At issue in the second assignment of error in the granted petition for appeal is whether the detectives were required to cease their questioning of Oliver when he asked to speak to a lawyer.  But the second assignment of error in the Commonwealth's opening brief raises a different issue: whether the interview was voluntary throughout.  The words "voluntary" and "involuntary" do not even appear in the Commonwealth's arguments in its petition for appeal.  Because the alterations to the second assignment of error, if allowed, would permit the Commonwealth to argue a different issue on appeal than was raised in the Commonwealth's petition for appeal, these alterations are substantive changes, by definition.  *See Henderson v. Cook*, 297 Va. 699, 707 (2019) (defining non-substantive alterations "as those that 'do not permit the appellant to argue a different issue on appeal'" (quoting *Northam v. Virginia State Bar*, 285 Va. 429, 434 n.* (2013))).  Such substantive alterations to an assignment of error defeat the purpose of assignments of error, which "is to alert the appellate court and opposing counsel to the *precise error* allegedly committed below and *to limit review to that issue*."  *Brooks v. Commonwealth*, 61 Va. App. 576, 583 (2013) (emphasis added).  Therefore, "[i]t is improper for an appellant to change the wording of an assignment of error from

- 19 -

that which was presented to the Court at the petition stage."[10] *Henderson*, 297 Va. at 705 (quoting *Allstate Ins. Co. v. Gauthier*, 273 Va. 416, 418 n.* (2007)). Accordingly, Rule 5A:12(c)(1)(i) provides that "[o]nly assignments of error assigned in the petition for appeal will be noticed by this Court." This Court does not "recognize any unauthorized substantive alteration to the granted assignment of error." *Henderson*, 297 Va. at 707 (quoting *Commonwealth v. Herring*, 288 Va. 59, 72 (2014)). Therefore, this Court may not lawfully consider the Commonwealth's altered second assignment of error. *See Northam*, 285 Va. at 434 n.* ("It is well established that the Court will not consider assignments of error as modified by an appellant's opening brief, but only as granted by the Court.").

The majority glosses over the Commonwealth's unauthorized alterations to its second assignment of error by asserting in a footnote that "the changes here are not fatal to the appeal because they do not change the substance of the errors alleged." (Internal quotation and citations omitted). This assertion is demonstrably false in light of the above comparison between the altered and granted second assignment of error. The comparison shows that the altered second assignment of error changed the issue from the *Miranda v. Arizona*, 384 U.S. 436 (1966), right to counsel during custodial interrogation to the voluntariness of non-custodial statements and actions. By raising an issue that was not encompassed by the second assignment of error in the granted petition for appeal, the Commonwealth substantively changed that assignment of error. Therefore, the majority erred in considering the altered second assignment of error. *See Northam*, 285 Va. at 434 n.*.

---

[10] The Commonwealth also altered the first assignment of error by changing "Respondent" to "Appellee" and by adding the phrase "at any point during the interview." These alterations are non-substantive to the extent that both versions of the first assignment of error raise the same issue. "While it is improper for an appellant to alter the wording of a [granted] assignment of error . . . non-substantive changes to an assignment of error . . . do not default the issue raised." *Henderson*, 297 Va. at 707 (alterations in original) (quoting *Northam*, 285 Va. at 434 n.*).

The majority also erroneously asserts that "[t]he original assignments of error, even if not amended, sufficed to warrant reversal." If the Commonwealth had adequately briefed the issue presented in the granted second assignment of error, the improper modification of the second assignment of error would not prevent this Court from considering the issue for which an appeal was granted. *See Henderson*, 297 Va. at 708. But the Commonwealth abandoned the second assignment of error granted in the petition by omitting it and its related arguments from the opening brief. Under these circumstances, the second assignment of error in the Commonwealth's petition for appeal cannot lawfully serve as a basis for reversal. *See id.* at 708-09. Because the Commonwealth made substantive changes to the second assignment of error and did not adequately brief the granted issue, the matter is defaulted. *See id.* at 710.

The Commonwealth's original, unaltered assignments of error were fatally flawed because neither of them addressed the basis of the trial court's judgment granting the suppression motion. Oliver's motion to suppress was based on alternative grounds. Oliver claimed that (1) his *Miranda* rights were violated when he was subjected to custodial interrogation and (2) even if the interrogation was non-custodial, the encounter became non-consensual and his statements became involuntary at the point where he asked for an attorney. Although the trial court granted Oliver's motion based on the second ground, both of the Commonwealth's original assignments of error addressed only the first ground of Oliver's suppression motion, which the trial court rejected. This explains why the Commonwealth substantively altered the second assignment error to address the voluntariness issue, which was the basis of the trial court's judgment granting the motion to suppress. Because the assignments of error in the granted petition for appeal limit the scope of this Court's review, the Court cannot properly consider the issue of voluntariness in this appeal. *See id.* at 707; *Northam*, 285 Va. at 434 n.*.

IV. THE SUPPRESSION ORDER'S LEGAL AND EVIDENTIARY SUPPORT

Assuming *arguendo* that the Commonwealth did not waive its second assignment of error, the trial court's presumptively correct suppression of the DNA evidence should be affirmed because it is supported by the application of the law to the evidence. The Commonwealth has the burden to show that granting the motion to suppress was reversible error. *See Taylor v. Commonwealth*, 70 Va. App. 182, 186 (2019). On appeal of a trial court's order granting a defendant's motion to suppress evidence, "the evidence must be viewed in the light most favorable to the defendant and findings of fact are entitled to a presumption of correctness unless they are plainly wrong or without evidence to support them." *Commonwealth v. Peterson*, 15 Va. App. 486, 487 (1992) (citing Code § 8.01-680).

Oliver's motion to suppress was based on the Fourth, Fifth, Sixth, and Fourteenth Amendments. The Fourth Amendment right against unreasonable searches and seizures is implicated by the detective's collection of Oliver's DNA because "using a buccal swab on the inner tissues of a person's cheek in order to obtain DNA samples is a search." *Maryland v. King*, 569 U.S. 435, 446 (2013). Given that Oliver was not under arrest when the detective collected his DNA, Oliver had a reasonable expectation of privacy that the police would not swab his mouth without a warrant and without his voluntary consent. *Cf. id.* at 465-66 (holding that taking and analyzing a cheek swab of a validly-arrested person's DNA is "a legitimate police booking procedure that is reasonable under the Fourth Amendment").

"[W]hen the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied." *Commonwealth v. Ealy*, 12 Va. App. 744, 752-53 (1991) (alteration in original) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 248-49 (1973)). "[V]oluntariness is a

- 22 -

question of fact to be determined from all the circumstances." *Bay v. Commonwealth*, 60 Va. App. 520, 535 (2012) (quoting *Ohio v. Robinette*, 519 U.S. 33, 40 (1996)). The trial court's implicit finding that Oliver did not give voluntary consent to the buccal swab procedure is a factual determination that is presumptively correct and must not be overturned on appeal unless clearly erroneous. *See Ealy*, 12 Va. App. at 753.

Taking the evidence in the light most favorable to Oliver, as the prevailing party below—as this Court must on appellate review—a rational fact-finder could find, based on the totality of the evidence, that Oliver's consent to the buccal swab search of his mouth was not voluntary. Although Oliver voluntarily met with the detectives at the outset of the interrogation, the evidence—including a video of Oliver's interrogation—supports a finding that the encounter had become non-consensual by the time Oliver asked for a lawyer and was subsequently swabbed for DNA. Considering the evidence in this context, a rational fact-finder could find that Oliver's consent to the buccal swab search was elicited under coercive circumstances and obtained as a result of coercion rather than voluntary consent.

After more than an hour of questioning, Oliver stated, "I've been thinking about killing myself for the last year." When asked why he had suicidal thoughts, Oliver replied, "I just can't make enough money."

Detective Webb responded, "Is that all? Or is it that you're disgusted with yourself?" Detective Webb told Oliver that she could tell he was ashamed of his relationship with his fiancee's teenage daughter. Then Detective Webb stated, "So, let's talk about the time or times that your penis went in her vagina and caused her to be pregnant, ok?"

A minute before Oliver asked to talk to a lawyer, Oliver cried and slumped forward in his seat with his right hand over his eyes. Then Detective Webb said the following:

> I know it happened. And you're not being honest with us. And
> I'm getting really frustrated that you're not being honest, okay?

> Because we have been dancing around the truth for over an hour now. . . .We know that it happened. We know when it happened. We know that it happened in Meredith's bed. And we know it happened when Meredith had gone to work one day and Greg was at daycare, right? We already know these things. So let's just (pauses) keep going.

Before Detective Webb uttered the words, "keep going," she paused and punched her right fist into the palm of her left hand.

A few seconds later, as Oliver stared down at the floor, he asked in a choked-up voice, "Can I please just go?" Neither detective answered this question.

Seconds after Oliver asked to leave, Detective Webb asked Oliver if he would be willing to take a polygraph. Oliver asked, "Can I speak to a lawyer about that?"

Detective Webb replied, "Yep, that's up to you. It's your right."

Then Detective Webb asked Oliver if he had ever heard of a buccal swab. When Oliver replied, "no," Detective Webb explained the buccal swab procedure as Oliver continued staring down at the floor. Then Detective Webb asked Oliver, "Would you mind if I – if I do that to you?"

Without looking up, Oliver separated his clasped hands and threw them up to each side as he said, "Go ahead."

Detective Webb responded, "Okay, alright, and then let me go get that, and then, um, then you can leave at any time if you want to, but do you mind if we do that?"

Oliver replied, "Yes."

Detective Webb responded, "Oh, okay. Yes, I can do it?"

Oliver responded by swinging his right hand forward and upward, saying nothing. Then Detective Webb said, "Okay, let me go get it, and then, um, as soon as we're done, we'll wrap this up, okay?"

As Detective Webb was leaving the room, Oliver asked for more tissue. Detective Webb returned, gave Oliver some tissue, and then left again, leaving Oliver in the interrogation room with the other detective. Moments later, Detective Webb returned with the buccal swabs.

Detective Webb showed Oliver that she was removing the swab from its packaging. Then Detective Webb said, "Would you open your mouth for me?" Oliver closed his eyes and opened his mouth, and Detective Webb proceeded to swab Oliver's inner cheeks.

Considering the totality of evidence related to the DNA collection from Oliver, a rational fact-finder could find that Oliver did not voluntarily consent to the buccal swab search. Oliver was asked to submit to the buccal swab search moments after Detective Webb explicitly accused him of having sexual intercourse with his fiancee's teenage daughter. Such a "specific allegation of criminal wrongdoing to the suspect . . . is highly significant among the totality of factors" in determining whether a police encounter is non-consensual. *See Barkley v. Commonwealth*, 39 Va. App. 682, 692-93 (2003) (alteration in original) (quoting *Davis v. Commonwealth*, 37 Va. App. 421, 431-32 (2002)). A rational fact-finder could find that Oliver's meeting with detectives transitioned into a non-consensual encounter and that the detective thereafter used coercion to obtain DNA samples from Oliver. After specifically alleging criminal wrongdoing to Oliver, Detective Webb made a threatening gesture with her fist as she told Oliver, "Let's just keep going." When Oliver responded with a tearful request to leave, both detectives ignored his request. Then Detective Webb asked Oliver to submit to the buccal swab procedure. A rational fact-finder could consider Oliver's verbal response, "go ahead," in conjunction with his body language—staring at the floor, unclasping his hands, and throwing his hands up—to be evidence of Oliver's submission to authority rather than his free and voluntary expression of consent. Detective Webb subsequently told Oliver that she would go and get the buccal swabs and "then you can leave at any time if you want to." A rational fact-finder could find that Detective Webb

thereby conditioned Oliver's freedom to leave on his submission to the buccal swabs. When Detective Webb again asked Oliver if he would mind if they used the buccal swabs on him, Oliver replied, "Yes." Detective Webb responded, "Yes, I can do it?" Then Oliver merely swung his right hand forward in response, but he did not respond verbally. After Detective Webb returned with the buccal swabs, she said to Oliver, "Would you open your mouth for me?" A rational fact-finder could conclude, based on the totality of the evidence taken in the light most favorable to Oliver, that Oliver's non-verbal response of closing his eyes and opening his mouth was his compliance with a perceived directive, not a free and voluntary consent to the buccal swab search. Therefore, even if the voluntariness issue in the Commonwealth's altered second assignment of error was not procedurally defaulted, the trial court's suppression of the DNA evidence should be affirmed.

V. CONCLUSION

For the foregoing reasons, I would affirm the trial court's order granting Oliver's motion to suppress. Accordingly, I respectfully dissent.